**Melvin PEDFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–85–327–CR.**

Court of Appeals of Texas, Austin.

Nov. 19, 1986.
Discretionary Review Refused
Feb. 18, 1987.

J.W. Howeth, Terrey Cobb, Austin, for appellant.

Ronald Earle, Dist. Atty., Bryan Case, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

SHANNON, Chief Justice.

Appellant Melvin Pedford seeks to set aside a judgment of conviction for burglary of the Marins' house, rendered after a jury trial in the district court of Travis County. Appellant's punishment, enhanced by proof of two prior felony convictions, was assessed by the jury at ninety-nine years. This Court will affirm the judgment of conviction.

By his first point of error, appellant complains that the district court erred in admitting proof of an extraneous offense, the burglary of Cathy Lindsay's house. An accused is entitled to be tried on the accusation in the State's pleading and not for some collateral crime or for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). Nevertheless, evidence of other crimes committed by the accused is admissible when such evidence is both material and relevant to a contested issue in the prosecution. *Albrecht v. State, supra.* Although relevant to the suit being prosecuted, evidence of an extraneous offense is not admissible unless the commission of such offense is clearly shown and the accused is clearly proved to be the perpetrator. *Wallace v. State*, 679 S.W.2d 1, 5 (Tex.Cr.App. 1983); *Phillips v. State*, 659 S.W.2d 415 (Tex.Cr.App.1983).

Appellant does not claim that proof of the Lindsay burglary was not relevant to the instant prosecution but instead asserts that the evidence was insufficient to establish that it was he who burgled Lindsay's house. Lindsay's house and the Marins' house are located in the same neighborhood. The Lindsay burglary was committed twelve to fourteen hours after the Marin burglary. A Mustang automobile matching the description of the one appellant was driving when arrested was seen in front of Lindsay's house on the morning of its burglary. Appellant's palmprint was found at the burglar's point of entry into Lindsay's house. Someone had pried the screen loose, removed it and left it on the porch. There was also evidence that the officers found in appellant's motel room

costume jewelry in a purple bag with the trademark "Marriot" stamped on its side. Cathy Lindsay subsequently appeared at the police station and identified a purple bag bearing the "Marriot" label, and containing costume jewelry, as property taken from her house during the burglary. Appellant points out, however, that the State failed to prove that the property found in his possession was *identical* to that stolen from Lindsay's house.

Assuming *arguendo* that the State's proof concerning appellant's possession of Lindsay's property was inadequate, this Court is of the view that the remaining proof was sufficient to identify appellant as the perpetrator of the Lindsay burglary so as to permit admission of the offense into evidence. The palmprint on the frame of Lindsay's windowscreen is convincing evidence that it was appellant who broke into the house. There was no evidence introduced which offered a legitimate reason for the presence of the print. *Cf. Caudillo v. State,* 167 Tex.Cr.R. 147, 318 S.W.2d 891 (1958).

Given the facts that appellant was a stranger to Lindsay's house, that the window screen was removed at the time of the commission of the burglary, and that an automobile resembling appellant's was parked by Lindsay's house near the time of the burglary, it may be concluded that appellant's palmprint was made during entry into Lindsay's house. The point of error is overruled.

By his final point of error, appellant claims that the district court erroneously permitted the State to comment during jury argument upon appellant's failure to testify. The State's evidence relating to the burglary charged in the indictment showed that the burglary victims, Cirildo and Grace Marin, chased appellant as he fled from their house. When Cirildo Marin cornered the appellant several blocks away, appellant pointed a pistol at Cirildo Marin and pulled the trigger, but the gun did not discharge. Appellant then turned the pistol toward Grace Marin and fired a shot

which missed her. Appellant then fled, but was arrested the next day.

During his argument in the punishment phase of the trial, defense counsel endeavored to explain why appellant pulled a pistol on Cirildo Marin and then fired a shot at Grace Marin:

I think it's logical to conclude from that that the gun was fired as a warning shot. If somebody—if [appellant] had wanted to kill somebody—he had two unarmed people there. He could have stopped right then and there and used the firearm on those people right then and there. Nobody could have stopped him. Instead, he was trying to get away. It was in the process of escape and extracating [sic] himself from the attack of Mr. Marin. You may not think that's a good thing to do, but it is not the same—it is not the same as going out and seeking someone out to shoot them with a firearm. Take that into consideration in your verdict here.

In rebuttal, the prosecuting attorney argued:

What someone believes in their [sic] own mind can be shown by evidence, and the evidence that is before you is of testimony of the acts that [appellant] did. From those acts that he did, sticking this pistol in Cirildo Marin's face and pulling the trigger, you can infer what was in his mind and you can infer that he either intended to kill him or that he intended to scare him and to make him think he was about to die, one or the other, and I say to you for purposes of punishment, it didn't matter. Either inference is worth life in the Texas Department of Corrections.

But he didn't even stop there. What did he do next after having placed this pistol in the man's face, after having pulled the trigger and allowed the hammer to fall? There's no evidence whether or not the gun was loaded or unloaded other than that there was no shot fired. It is possible that there was a live round in the chamber. That is possible, and that the round just simply failed to go off. We

have no evidence on that point one way or the other.

DEFENSE COUNSEL: I'll object at this time. Now, there's only one logical person who can testify as to whether or not there was a round in the chamber of that pistol when the trigger was pulled the first time and that's the defendant, and he's commenting on the failure of the defendant not to testify and I object.

THE COURT: I'll overrule the objection.

■ The refusal of the district court to sustain counsel's objection is the foundation of appellant's second point of error. Failure of a defendant to testify may not be alluded to or commented on by counsel. Tex.Code Cr.P. art. 38.08; *Bird v. State,* 527 S.W.2d 891 (Tex.Cr.App.1975). When the challenged comment is indirect, then counsel's comment, when viewed by the jury, "must be 'manifestly' intended or of such a character that the jury would *necessarily and naturally* take it as comment on the accused's failure to testify." *Banks v. State,* 643 S.W.2d 129, 134 (Tex.Cr.App. 1982); *Todd v. State,* 598 S.W.2d 286 (Tex. Cr.App.1980) (emphasis added). "[I]n applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character." *Jones v. State,* 693 S.W.2d 406 (Tex.Cr.App.1985).

Improper "indirect references" usually involve comments labeling "certain evidence as uncontroverted, unrefuted, or uncontradicted," when only the defendant himself could provide the contradiction. *See Myers v. State,* 573 S.W.2d 19, 20–21 (Tex.Cr.App.1978); *see also Nowlin v. State,* 507 S.W.2d 534, 536–37 (Tex.Cr.App. 1974). These holdings are consistent with the often stated rule that "[f]or indirect comments . . . to constitute reversible error they must *call for* a denial of an assertion of fact or contradictory evidence that only the appellant is in a position to offer." *Nowlin, supra* (emphasis added); *Davis v. State,* 670 S.W.2d 255, 256 (Tex.Cr.App. 1984); *Nickens v. State,* 604 S.W.2d 101, 104 n. 1 (Tex.Cr.App.1980).

■ Although it is true that the prosecuting attorney "called the jury's attention to the absence of evidence that only the testimony of appellant could supply," *Banks, supra* (the question of whether there was a round loaded in the chamber), the fact remains that the prosecutor never "called on" appellant to explain this absence, either directly or implicitly.

Although it is possible to view the prosecuting attorney's remark as directed toward appellant's failure to testify, it seems much more likely that the prosecutor was simply pointing out that no one knew whether or not there was a bullet in the pistol's chamber; in other words, the evidence supported either inference. When a prosecutor's comment is sufficiently ambiguous to yield two plausible inferences, then the comment may not "necessarily" be viewed by the jury as a reference to defendant's failure to testify. *Henson v. State,* 683 S.W.2d 702 (Tex.Cr.App.1984); *see also Barber v. State,* 628 S.W.2d 104, 111 (Tex.App.1982, pet. ref'd), *cert. denied,* 459 U.S. 874, 103 S.Ct. 164, 74 L.Ed.2d 136 (1982) (where prosecutor said "we don't know" what defendant planned to do with victim, inference was too remote to be error); *Fugitt v. State,* 623 S.W.2d 471 (Tex. App.1981, pet ref'd) (where the comment of prosecutor that "We'll never know" what the defendant meant by his threat to the robbery victims was viewed by the court as merely an invitation to speculate on what might have happened). The point of error is overruled.

The judgment of conviction is affirmed.