Wesley HARRELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 1232–92.

Court of Criminal Appeals of Texas, En Banc.

Sept. 21, 1994.

Odis R. Hill, Longview, for appellant.

David Brabham, Dist. Atty., and C. Patrice Savage, Asst. Dist. Atty., Longview, Robert Huttash, State's Atty., and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MALONEY, Judge.

A jury convicted appellant of engaging in organized criminal activity and sentenced him to fifteen years in prison. TEX.PENAL CODE ANN. § 71.02(a)(5).[1] Initially, the Twelfth Court of Appeals reversed the conviction. *Harrell v. State,* 885 S.W.2d 427 (Tex.App.—Tyler 1991) (*"Harrell* I"). This Court reversed and remanded. *Harrell v. State,* 820 S.W.2d 800 (Tex.Crim.App.1991) (*"Harrell* II"). On remand, the Court of Appeals affirmed. *Harrell v. State,* 885 S.W.2d 433 (Tex.App.—Tyler 1992) (*"Harrell* III"). We granted appellant's petition for discretionary review to determine, for purposes of admissibility, the standard of proof applicable to the State in proving the defendant committed an extraneous offense.[2] We will reverse the judgment of the Court of Appeals.

At the guilt/innocence phase of trial, the State introduced State's exhibit number 76, a ledger depicting drug transactions during February and March of an unspecified year. Although it is unclear, the ledger reflected that someone named Wesley made four four-ounce purchases during March for $27,100. A Texas Ranger testified that the year was 1986 because "the prices of the cocaine at that time were the same as what they would have been in '86." The instant offense was alleged to have occurred in September 1986. Although some of the first names in the

---

1. Section 71.02(a)(5) of the TEXAS PENAL CODE provides:

   (a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following:

   \*     \*     \*     \*     \*     \*

   (5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug, or unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception[.]

   TEX.PENAL CODE ANN. § 71.02(a)(5). The rather lengthy indictment alleges a conspiracy to deliver

cocaine from September 3, 1986 to September 12, 1986. Appellant was one of over thirty people indicted for the instant offense.

2. *See* TEX.R.APP.P. 200(c)(2) & (3). Appellant does not complain of the limited purpose for which the extraneous offense evidence was offered under TEX.R.CRIM.EVID. 404(b), nor does he complain about any extraneous offense evidence offered at punishment under TEX.CODE CRIM.PROC. ANN. art. 37.07, § 3(a). Further, because this was not a capital trial, we are not concerned with TEX.CODE CRIM.PROC.ANN. art. 37.071. Nor are we presented here with the issue of the applicable jury instruction on extraneous offenses.

ledger, like appellant's, are the same as some indicted for this offense, most of the names are not.

Appellant objected to the admission of State's exhibit number 76 under TEX.R.CRIM. EVID. 401, 403, and 404(a) & (b). He claimed it was an extraneous offense which the State had the burden of proving beyond a reasonable doubt, and that the State had not met that burden because no connection was shown between appellant and the ledger entries other than the name "Wesley."[3] The trial court overruled the objection, stating that the relationship of the parties before the conspiracy was "germane" to whether a conspiracy existed.

Relying upon *Turner v. State*, 754 S.W.2d 668, 673 (Tex.Crim.App.1988), the Court of Appeals held the trial court erred in admitting State's exhibit number 76 because the evidence did not clearly show that appellant committed the extraneous offenses depicted in the ledger. *Harrell* I, 885 S.W.2d at 432–33. The Court of Appeals noted that although "the evidence creates a strong suspicion that appellant was the 'Wesley' who was the perpetrator of the extraneous offenses, . . . the evidence falls short of a clear showing that he was the perpetrator." *Id.* at 433. It further held that the error was not harmless. *Id.* at 433.

The State filed a petition for discretionary review, and we reversed and remanded to the Court of Appeals for reconsideration in light of *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim.App.1991) (op. on reh'g) (setting forth the proper procedure under the Texas Rules of Criminal Evidence for preserving error in the admissibility of extraneous offenses and the trial court's and appellate court's function in the determination of error). *Harrell* II. On remand, the Court of Appeals recognized that although *Montgomery* did not address the issue involved here, it emphasized admissibility. *Harrell*

III, 885 S.W.2d at 437. Relying upon *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) and *Harris v. State*, 827 S.W.2d 949 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992),[4] the Court of Appeals held that Texas no longer requires a clear showing that the defendant committed an extraneous offense. *Id.*, 885 S.W.2d at 438. Instead, evidence of an extraneous offense is admissible, according to the Court of Appeals, if a jury could find by a preponderance of the evidence that the defendant committed the extraneous offense. *Id.* In affirming the conviction, the Court of Appeals held the jury could "justifiably conclude by a preponderance of the evidence that the Appellant committed the extraneous offenses recorded in the ledger." *Id.* at 438.

Appellant contends the Court of Appeals erred in applying a preponderance of the evidence standard because evidence of an extraneous offense is only admissible if the State "clearly prove[s]" or makes a "clear showing" that the defendant committed such offense. *Wyle v. State*, 777 S.W.2d 709, 715 (Tex.Crim.App.1989); *Turner*, 754 S.W.2d at 673. The State[5] contends that since the enactment of the Texas Rules of Criminal Evidence, the trial court should admit evidence of an extraneous offense if there is sufficient evidence from which the jury could find the defendant committed the extraneous offense. *See* TEX.R.CRIM.EVID. 104(b). The State urges us to follow the United States Supreme Court's interpretation of rule 104(b) of the Federal Rules of Evidence that evidence of an extraneous offense is admissible if the jury could reasonably conclude by a preponderance of the evidence that the defendant committed such offense. *See Huddleston*; FED.R.EVID. 104(b). A review of our caselaw is helpful in resolving this issue.

---

3. Appellant also objected because there was no testimony that the items in the ledger related to cocaine or to the instant offense, although it was clearly offered by the State as other cocaine offenses committed by appellant. Because the Court of Appeals only addressed the connection between appellant and the extraneous offenses depicted in the ledger, we will do the same.

4. *Harris* is inapplicable to this case because it involved the punishment hearing of a capital trial.

5. Both the Gregg County District Attorney and the State Prosecuting Attorney have filed briefs in this cause.

*I*

This Court has long required that juries be instructed not to consider extraneous offense evidence unless they believed beyond a reasonable doubt that the defendant committed such offense. *See, e.g., Ernster v. State,* 165 Tex.Crim. 422, 308 S.W.2d 33, 34–35 (1957); *Nichols v. State,* 138 Tex.Crim. 324, 136 S.W.2d 221, 221–22 (1940); *Vaughn v. State,* 135 Tex.Crim. 205, 118 S.W.2d 312 (1938); *Miller v. State,* 122 Tex.Crim. 59, 53 S.W.2d 790, 791–92 (1932); *Lankford v. State,* 93 Tex.Crim. 442, 248 S.W. 389, 389–90 (1923); *see also* 8 Michael J. McCormick & Thomas D. Blackwell, Texas Criminal Forms and Trial Manual § 88.05 (Texas Practice 1985).

■ In many cases where the issue was, as here, the standard of admissibility for extraneous offenses, this Court relied in part upon jury instruction cases requiring that juries be instructed not to consider extraneous offense evidence unless they believed beyond a reasonable doubt that the defendant committed such offense. *See, e.g., Tip-* pins v. State, 530 S.W.2d 110, 111 (Tex.Crim. App.1975) (citing *Ernster*); *Tomlinson v. State,* 422 S.W.2d 474, 474 (Tex.Crim.App. 1967) (citing *Lankford*); *Shepherd v. State,* 143 Tex.Crim. 387, 158 S.W.2d 1010, 1011 (1942) (citing *Nichols*); *Wells v. State,* 118 Tex.Crim. 355, 42 S.W.2d 607, 608 (1931) (quoting *Lankford*); *see also Hughitt v. State,* 123 Tex.Crim. 168, 58 S.W.2d 509 (1933) (quoting *Wells*). Thus, with respect to the State's burden of proof in proving a defendant committed an extraneous offense, this Court has perceived a connection between the standard of admissibility and the jury instruction.[6]

However, while this Court has remained consistent in requiring that the trial court instruct the jury not to consider extraneous offense evidence unless it believes beyond a reasonable doubt that the defendant committed such offense, we have not been as consistent in our holdings regarding the standard of admissibility of extraneous offenses.[7] Al-

---

6. With respect to the State's burden in proving the elements of the extraneous offense, apart from the agency issue, this Court has on occasion regarded the standard of admissibility of extraneous offenses and the jury instruction on extraneous offenses as indivisibly connected. *See Haley v. State,* 84 Tex.Crim. 629, 209 S.W. 675, 677, 678 (1919); *Pelton v. State,* 60 Tex.Crim. 412, 132 S.W. 480 (1910) (op. on reh'g).

In *Haley,* a murder case, the defendant and the deceased's wife were having an affair. To illustrate the defendant's motive, the State introduced evidence that ten months prior to the murder the defendant killed his wife. This Court noted that the extraneous offense evidence was inadmissible unless the State could prove beyond a reasonable doubt that the defendant poisoned his wife with the intent to kill her. *Haley,* 209 S.W. at 677. We also noted that the jury should be instructed not to consider the extraneous offense evidence unless the State proved beyond a reasonable doubt that the defendant's wife died from poison administered by the defendant with the intent to kill her. *Id.* at 678. Thus, *Haley* held that the State must prove the elements of the extraneous offense beyond a reasonable doubt, otherwise it is inadmissible, and that the jury must be instructed not to consider the extraneous offense evidence unless the State proved it beyond a reasonable doubt.

In *Pelton,* the defendant was charged with forgery, the State offered extraneous forgeries against him, and on rehearing this Court wrote:

In the instant case the court charged the jury that, "If any evidence has been introduced tending to show that defendant [committed extraneous forgeries], etc." In order for these collateral matters to be used by the jury as evidence on the intent of the defendant, we think *they must believe from the evidence beyond a reasonable doubt that they are forgeries.* It is not sufficient if the evidence only tends to show them to be forgeries. *If the evidence only tends to show them to be forgeries, then they are not admissible against a defendant.*

*Pelton,* 132 S.W. at 484 (op. on reh'g) (emphasis added). Thus, we held that because the State had to prove the elements of the extraneous offense for it to be admissible, the jury must be instructed not to consider extraneous offense evidence unless it believed it beyond a reasonable doubt to be an extraneous offense.

7. Early on, this Court recognized that evidence of an extraneous offense was inadmissible without proof "pertinently connecting" the defendant to its commission. *Williams v. State,* 38 Tex. Crim. 128, 41 S.W. 645, 648 (1897); *see Hooks v. State,* 97 Tex.Crim. 480, 261 S.W. 1053, 1054–55 (1924) (op. on reh'g); *Glenn v. State,* 76 S.W. 757 (Tex.Crim.App.1903); *see also Carmean v. State,* 163 Tex.Crim. 218, 290 S.W.2d 240, 242 (1956) (citing *Hooks* and *Glenn*) (defendant must be connected to extraneous offense). In other early cases, this Court enunciated a "reasonable degree of certainty" standard. *Walton v. State,* 41 Tex.Crim. 454, 55 S.W. 566, 567 (1900) (evidence of an extraneous offense was inadmissible because although there was "some suspicion" that the defendant was involved in the extraneous offense, the evidence did not indicate "with a

most fifteen years ago, in an attempt to resolve the inconsistencies of our previous holdings, we held that extraneous offense evidence was inadmissible unless:

> there [was] a *clear showing* that: 1) the evidence of the extraneous offense is material, i.e., going to an element of the offense charged in the indictment or information, 2) *the accused participated in the extraneous transaction being offered into evidence,* and 3) the relevancy to a material issue outweighs its inflammatory or prejudicial potential[.] [citations omitted].

*McCann v. State,* 606 S.W.2d 897, 901 (Tex. Crim.App. [Panel Op.] 1980) (footnote omitted) (emphasis added). Since *McCann,* we have required that the State clearly prove or make a clear showing that the defendant committed the extraneous offense sought to be offered against him. *E.g., Harris v. State,* 790 S.W.2d 568, 583 (Tex.Crim.App.1989); *Wyle,* 777 S.W.2d at 715; *Plante v. State,* 692 S.W.2d 487, 494–95 (Tex.Crim.App.1985); *Phillips v. State,* 659 S.W.2d 415, 418 (Tex. Crim.App.1983); *see also McGee v. State,* 725 S.W.2d 362, 365 (Tex.App.—Houston [14th Dist.] 1987, no pet.); *Pedford v. State,* 720 S.W.2d 267, 268 (Tex.App.—Austin 1986, pet

ref'd); *Newman v. State,* 700 S.W.2d 307, 311–12 (Tex.App.—Houston [1st Dist.] 1985), *rev'd on other grounds,* 743 S.W.2d 641 (Tex. Crim.App.1988). This standard of admissibility of extraneous offense evidence is known as the "clear" proof standard.[8] We have never clarified what is meant by "clear" proof, perhaps because most "clear" proof cases involve either no proof or overwhelming proof that the defendant committed the extraneous offense. However, there is some authority for interpreting "clear" proof to mean proof beyond a reasonable doubt. BLACK'S LAW DICTIONARY 250 (6th ed. 1990); *see Haley v. State,* 84 Tex.Crim. 629, 209 S.W. 675, 677 (1919). We view this as a logical interpretation, and it is consistent with the requirement that the trial court instruct the jury not to consider extraneous offense evidence unless it believes beyond a reasonable doubt that the defendant committed such offense. Indeed, it makes no sense for the trial court to, on the one hand, admit evidence of an extraneous offense using a certain standard for admissibility, but then, on the other hand, instruct the jury not to consider that same evidence unless it uses a different standard. *Cf. Geesa v. State,* 820

---

reasonable degree of certainty" that the defendant was connected with the extraneous offense); *see Fountain v. State,* 90 Tex.Crim. 474, 241 S.W. 489, 491 (1921); *Denton v. State,* 42 Tex.Crim. 427, 60 S.W. 670, 672 (1901); *see also Shepherd,* 158 S.W.2d at 1011 (citing *Nichols, Fountain, Denton* ). However, we also held that extraneous offense evidence was inadmissible unless the State proved the extraneous offense beyond a reasonable doubt. *Haley,* 209 S.W. at 677. We have held that an extraneous offense is inadmissible unless the defendant is "satisfactorily shown" to be the perpetrator. *Wells,* 42 S.W.2d at 608; *see Perez v. State,* 165 Tex.Crim. 639, 310 S.W.2d 334 (1958) (citing *Carmean, Hughitt, Wells* ); *Shepherd; Clark v. State,* 145 Tex.Crim. 63, 165 S.W.2d 747, 747 (1942); *Hughitt.* Later, this Court noted that an extraneous offense was inadmissible unless "the State is prepared to prove" the accused committed it, *Tomlinson,* 422 S.W.2d at 474 (citing *Lankford* ); *see Shaver v. State,* 496 S.W.2d 604, 605 (Tex.Crim.App.1973), suggesting the State had to prove the defendant committed the extraneous offense by the same standard of proof the State is required to use in proving the elements of the offense, namely beyond a reasonable doubt. *See* TEX.PENAL CODE ANN. § 2.01.

8. The genesis for this "clear" proof standard comes from an oft-quoted passage in Texas Jurisprudence. In the last two decades, this Court has frequently quoted and applied the language in Texas Jurisprudence which states that extraneous offenses are inadmissible "unless the commission of the other crime is clearly proved and the accused is shown to have been its perpetrator." 24 TEX.JUR.3d *Criminal Law* § 3035 at 180 (1982); 23 TEX.JUR. 2d *Evidence* § 195 at 302 (1961); *see, e.g., Ransom v. State,* 503 S.W.2d 810, 813 (Tex.Crim.App.1974); *Landers v. State,* 519 S.W.2d 115, 120 (Tex.Crim.App.1975) (op. on reh'g); *Eanes v. State,* 546 S.W.2d 312, 315 (Tex.Crim.App.1977); *Thompson v. State,* 615 S.W.2d 760, 761 (Tex.Crim.App.1981); *Elkins v. State,* 647 S.W.2d 663, 665 n. 3 (Tex.Crim.App. 1983); *Turner,* 754 S.W.2d at 673.

We have interpreted this language to require the State to clearly prove the accused committed the extraneous offense, despite the fact that the standard literally requires that the accused be "shown" to be the perpetrator. *See, e.g., Tippins v. State,* 530 S.W.2d at 111. For instance, in *Ransom,* after reciting the Texas Jurisprudence language, the Court indicated in its hypothetical examples that the defendant must be "clearly identified and shown" or "clearly shown" to be the perpetrator of the extraneous offense. *Ransom,* 503 S.W.2d at 813, 814.

S.W.2d 154 (Tex.Crim.App.1991) (special standard of review in circumstantial evidence cases was abolished because jury was no longer instructed on circumstantial evidence). Presumably, the standard of admissibility and the jury instruction were intended to mirror one another. Thus, given that the standard for jury consideration of extraneous offenses is well-settled as proof beyond a reasonable doubt, we hold that the standard of admissibility for extraneous offense evidence is also proof beyond a reasonable doubt.

## II

■ The State contends that the Texas Rules of Criminal Evidence, effective September 1, 1986, now govern the connection that must be shown between the defendant and an extraneous offense. Relying upon *Huddleston* and Federal Rule of Evidence 104(b), the State argues that evidence of an extraneous offense is admissible if the jury could reasonably find by a preponderance of the evidence that the defendant committed the extraneous offense.

In *Huddleston,* the petitioner contended that the trial court must make a preliminary factual finding by a preponderance of the evidence under federal rule 104(a) that the defendant committed the extraneous act.[9] *Huddleston,* 485 U.S. at 686–87, 108 S.Ct. at 1499–1500. The Supreme Court noted that federal rule 404(b) does not indicate that "any preliminary showing is necessary before [extrinsic act] evidence may be introduced for a proper purpose." *Id.* at 687–88, 108 S.Ct. at 1500. Consequently, the trial court does not make a "preliminary finding" under

federal rule 104(a) that the Government has proved the extrinsic act. *Id.* at 689, 108 S.Ct. at 1501. Nevertheless, the Court cautioned:

This is not to say, however, that the Government may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo. Evidence is admissible under Rule 404(b) only if it is relevant. * * * In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor. [citation omitted]

*Id.* The Supreme Court held that evidence of an extraneous offense is admissible under federal rule 104(b) [10] if the jury could reasonably conclude by a preponderance of the evidence that the defendant committed the extraneous offense. *See id.* The Court wrote:

In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact— here, that the televisions were stolen—by a preponderance of the evidence.

*Id.* at 690, 108 S.Ct. at 1501.

While we do not agree with all of *Huddleston*'s conclusions, we do agree with some of its analysis. We first point out that while the trial court might not be compelled to

9. The federal and Texas rule 104(a) are identical. They provide:

(a) Questions of Admissibility Generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination, it is not bound by the rules of evidence except those with respect to privileges.

FED.R.EVID. 104(a) & TEX.R.CRIM.EVID. 104(a).

Initially, the petitioner argued that the District Court must make its preliminary finding by clear and convincing evidence. However, in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97

L.Ed.2d 144 (1987), the Supreme Court held that preliminary factual findings under federal rule 104(a) are subject to a preponderance of the evidence standard. *See Huddleston*, 485 U.S. at 687 n. 5, 108 S.Ct. at 1500 n. 5.

10. The federal and Texas rule 104(b) are identical. They provide:

(b) Relevancy Conditioned on Fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

FED.R.EVID. 104(b) & TEX.R.CRIM.EVID. 104(b).

make a "preliminary finding" as to the proof of the extrinsic evidence under rule 104(a), under rule 104(b) the trial court must nevertheless make an initial determination as to the relevancy of the evidence, dependent "upon the fulfillment of a condition of fact".

In *Huddleston*, the conditional fact was whether the televisions were stolen. In the instant case, the conditional fact is whether appellant committed the extraneous offenses depicted in State's Exhibit 76. If appellant committed the extraneous offense, the evidence is relevant and admissible, provided it is not too prejudicial and is offered for a proper purpose. *See* Tex.R.Crim.Evid. 401, 403, & 404(b).[11] However, if appellant did not commit the extraneous offenses, the evidence is irrelevant and therefore inadmissible.[12] Tex.R.Crim.Evid. 402.

Neither the federal nor Texas rules of evidence specify what quantum of proof governs admissibility when the relevancy of the evidence is contingent upon the fulfillment of a conditional fact under rule 104(b). *Huddleston* concluded that the trial court must determine that the jury could reasonably conclude *by a preponderance of the evidence* the conditional fact. We decline to follow *Huddleston* to this extent. *See State v. Brooks*, 541 So.2d 801, 813–14 (La.1989) (rejecting *Huddleston* because Louisiana requires clear and convincing evidence that the defendant committed an unadjudicated extraneous offense). As discussed in Part I of this opinion, we are convinced that the proper quantum of proof in establishing that the defendant committed the extraneous offense is *beyond a reasonable doubt*. We therefore hold that in deciding whether to admit extraneous offense evidence in the guilt/innocence phase of trial, the trial court must, under rule 104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense.[13] In making that determination, the

11. Additionally, the Fifth Circuit limits the admissibility of extraneous offenses under federal rules 403 and 404(b) when it is doubtful that the defendant committed the extraneous offense. *See United States v. Garza*, 990 F.2d 171, 176–77 (5th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 332, 126 L.Ed.2d 278 (1993). In *Garza*, the defendant was charged with possession of 447 kilograms of cocaine with the intent to distribute. During trial, an agent with the Drug Enforcement Administration (DEA) testified that names of some of the Government's witnesses were in the DEA crime computer. On cross examination, the Government asked the agent if the name of anyone else involved in the case appeared in the computer. The agent testified that the defendant's name appeared in the DEA crime computer in connection with a 1990 seizure of 5200 pounds of marijuana. The Fifth Circuit held it was error to admit the testimony regarding the extraneous offense in the DEA crime computer because the Government failed to prove the defendant committed the extraneous offense. *Id.* at 177. The mere presence of the defendant's name in the DEA crime computer did not prove the defendant committed the extraneous offense in the computer, and without such proof the evidence was irrelevant. *Id.* Further, the extraneous offense evidence was inadmissible because it lacked probative value and was therefore too prejudicial. *Id.*

12. Judge Clinton suggests that Rules 401, 402, 403 and 404(b) sufficiently address the admissibility of extraneous offense evidence and do not contemplate any preliminary showing. Slip op.

at 5 (Clinton, J., concurring). Certainly those rules govern admissibility of relevant evidence and to that extent apply, as demonstrated above. However, as the Supreme Court recognized in *Huddleston*, Rule 104(b) specifically addresses *conditionally* relevant evidence, which is subject to special considerations.

13. *Cf. Huddleston*, 485 U.S. at 690, 108 S.Ct. at 1501 (trial court must examine evidence and decide whether jury could reasonably find conditional fact by preponderance of evidence); *see also* Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a) (extraneous offenses are admissible at the punishment phase of a non-capital trial of an offense occurring on or after September 1, 1993 if the defendant is shown *beyond a reasonable doubt* to have committed the extraneous offense).

Judge Clinton in his concurring opinion criticizes our imposition of the beyond a reasonable doubt standard in the Rule 104(b) context, arguing that the rule does not require any such predicate on its face. Op. at 165 (Clinton, J., concurring). Judge Clinton indicates that no standard of proof should apply—just that the evidence be "sufficient to support a finding" that the condition had been fulfilled. *Id.* at 165. He suggests that the evidence would be sufficient to support that finding if it merely supported an inference with some degree of certainty. *Id.* at 166. This position in contrary to *Huddleston* which recognized the application of a quantum of proof in determining admissibility under Rule 104(b), albeit a lesser one than we choose to apply, and to indications in the Code of Criminal Procedure that a quantum of proof should be applied when

"strength of the evidence establishing the similar act is one of the factors the [trial] court may consider when conducting the Rule 403 balancing." *Id.*, 485 U.S. at 689 n. 6, 108 S.Ct. at 1501 n. 6.[14]

In the instant case, in order for the evidence to have been sufficient for the trial court to admit it, it had to determine that a jury could find beyond a reasonable doubt that appellant committed the extraneous offenses depicted in State's exhibit number 76. Otherwise, that portion of the exhibit depicting extraneous offenses was inadmissible. Indeed, the trial court instructed the jury not to consider evidence of extraneous offenses unless it believed beyond a reasonable doubt that appellant committed them and then the jury could only consider them on the issue of intent. The Court of Appeals, therefore, erred in holding that State's exhibit number 76 was admissible because the jury could find by a preponderance of the evidence that the defendant committed the extraneous offenses depicted in the ledger. *Harrell III*, 885 S.W.2d at 438.

In its initial opinion, however, the Court of Appeals held that although "the evidence creates a strong suspicion that appellant was the 'Wesley' who was the perpetrator of the extraneous offenses, ... the evidence falls short of a clear showing that he was the perpetrator." *Harrell I*, 885 S.W.2d at 433.

The Court further held that the error was not harmless. *Id.* at 433. In part I of this opinion, we noted that the clear proof standard was the same as proof beyond a reasonable doubt. Because the Court of Appeals has previously applied a standard substantively the same as proof beyond a reasonable doubt, we see no need to remand this case to that court for another determination or ·to conduct the analysis ourselves.

The judgment of the Court of Appeals in *Harrell* III is reversed, the judgment of the Court of Appeals in *Harrell* I is reinstated, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

WHITE, J., dissents.

CAMPBELL, J., not participating.

CLINTON, Judge, concurring.

We granted the present petition for discretionary review in order to determine whether the Rules of Criminal Evidence have altered the standard of proof by which the proponent of evidence of "other crimes, wrongs, or acts" under Tex.R.Cr.Evid., Rule 404(b), must establish that the accused actually committed that extraneous misconduct. Specifically, the question is whether Tex.R.Cr.Evid., Rule 104(b), has somehow supplanted the "clear proof" standard this Court finally alighted on

---

admitting extraneous offense evidence. Indeed, the Legislature has recognized that *even in the punishment phase* of a noncapital case, there must be evidence beyond a reasonable doubt that the defendant committed an extraneous act before it may be admitted. Tex.Code Crim.Proc.Ann. art. 37.07 § 3(a). Admittedly, article 37.07 is inapplicable to the instant case because this offense occurred in 1986 and the extraneous offenses were introduced at guilt/innocence. However, given that the legislature has now provided for the highest standard of proof for the admissibility of extraneous offenses at punishment, and that greater restrictions generally have been placed upon the admissibility of extraneous offenses at guilt/innocence than at punishment, *compare* Tex.R.Crim.Evid. 404(b) *with* Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a), presumably, the same standard of proof exists at guilt/innocence as well. *But see* Tex.Code Crim.Proc.Ann. art. 37.-07, § 3(e) (this section does not affect the admissibility of extraneous offenses at guilt/innocence).

**14.** In *Montgomery*, this Court detailed the procedure for preserving error in the admission of

extraneous offenses under our rules of evidence, and the trial court's and appellate court's function in the determination of error. The defendant must first object under rule 404(b), then the State must show that the proffered evidence is relevant apart from its tendency to show that the defendant is a criminal. *Montgomery*, 810 S.W.2d at 387. The trial court then should honor any request by the defendant for the State to articulate into the record the limited purpose under rule 404(b) for which the evidence is offered. *Id.* If the trial court determines the evidence is relevant, the defendant must further object under rule 403. *Id.* at 388. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Id.* at 389. The appellate court will uphold a trial court's ruling absent an abuse of discretion, i.e. "as long as the trial court's ruling was at least within the zone of reasonable disagreement...." *Id.* at 391. *Montgomery* is distinguishable because it does not concern quantum of proof, and nothing in *Montgomery* abolishes the requirement of a quantum of proof regarding extraneous offenses.

during the 1980's. See *McCann v. State,* 606 S.W.2d 897 (Tex.Cr.App.1980). During oral argument in this cause, Judge Maloney suggested that the standard for admissibility of Rule 404(b) evidence ought to be tied to the standard we require juries in Texas to impose in deciding whether to consider extraneous misconduct in their deliberations, *viz:* whether the proponent has proven the accused committed the misconduct to a level of confidence beyond a reasonable doubt. As per his suggestion in oral argument, Judge Maloney now holds for a majority of the Court that as a predicate to admitting evidence of "other crimes, wrongs, or acts," the trial judge must determine that the jury could reasonably find that the accused committed that misconduct beyond a reasonable doubt.

After oral argument, the State Prosecuting Attorney filed a supplemental brief. Noting Judge Maloney's suggestion that there is a conceptual link between the standard by which a jury decides whether to consider evidence of extraneous misconduct and the threshold standard by which the trial court makes the decision to admit the evidence in the first instance, the State Prosecuting Attorney argued in his supplemental brief that in light of the Rules of Criminal Evidence, the Court should revisit the jury instruction issue as well. Given Rule 104(b), supra, and the United States Supreme Court's construction of the federal analogue in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Court should reconsider pre-Rules holdings that juries must be instructed they must find to a level of

confidence beyond a reasonable doubt that an accused committed another crime, wrong or act before taking it into account in their deliberations.[1] The State Prosecuting Attorney urged us to grant another petition for discretionary review then pending that squarely addressed this question, and consider that petition before or in concert with the present petition. Subsequently, we did grant that petition for discretionary review. See *George v. State,* No. 006–93, pet. granted April 14, 1993.

Today, without reference to the briefs in *George,* including that of the State Prosecuting Attorney, the majority simply concludes, relying on long-time precedent, all of which pre-dates the Rules of Criminal Evidence, that jurors still must be instructed to find an accused perpetrated extraneous misconduct beyond a reasonable doubt before they can consider them in their deliberations. From this uncritically accepted premise the majority reasons that it necessarily follows that the standard for admissibility of such evidence is also proof beyond a reasonable doubt, and that the trial court therefore should determine, as a predicate to admissibility of such evidence in the first place, whether a rational jury *could* conclude, to a level of confidence beyond a reasonable doubt, that the accused committed the extraneous misconduct. Along the way the majority hypothecates that whenever this Court has said in the past that it must be "shown" that the accused committed the extraneous misconduct, and that the proof must be "clear" to be admissible, what we meant all along was that the

---

**1.** In *Huddleston v. United States,* supra, the defendant argued that under Fed.R.Evid., Rule 104(a), the trial judge should have made a preliminary finding that all material aspects of any "other crimes, wrongs, or acts" the Government tendered under Fed.R.Evid., Rule 404(b), had been established by a preponderance of the evidence prior to admitting them into evidence. The Supreme Court rejected this argument, holding instead that such a preliminary finding of admissibility of extraneous misconduct is not called for under Rule 104(a). In the Rule 404(b) context, however, it noted that "similar act evidence" is not relevant unless "the jury can reasonably conclude that the act occurred and that the defendant was the actor." Evidence that Huddleston was selling television sets was relevant only if the jury could reasonably find that

the sets were stolen, thus raising the question of "conditional relevance" under Fed.R.Evid., Rule 104(b). In that, the trial court neither weighs credibility nor makes a finding that the conditional fact has been proven, but examines all the evidence and simply decides whether the jury could reasonably find the conditional fact, i.e., that the televisions were stolen, by a preponderance of the evidence. The State Prosecuting Attorney urges us to adopt the *Huddleston* level of confidence standard, and likewise hold that under our Rule 104(b), the trial court need only find that a rational jury could find all predicate facts by a preponderance of the evidence, *not* by clear and convincing evidence, as appellant contends, or beyond a reasonable doubt, as the majority today holds.

trial court must be able to say that a rational jury could find beyond a reasonable doubt that the accused was the perpetrator. This whole process of reasoning seems to me to be result-oriented, and not a little disingenuous.

## I.

Rather than accept the majority's bald premise—it cannot be called a reasoned conclusion—that even after the effective date of the Rules of Criminal Evidence, juries must be instructed under the reasonable doubt standard, I would first examine and decide that question in *George*. It is true, as the majority notes, that Rule 104(b) does not on its face purport to set out a particular level of confidence by which the factfinder must find that a conditional fact, upon which the relevance of the proffered item of evidential fact depends, has been established. The rule addresses the preliminary question of "relevancy conditioned on fact," simply providing that the trial court "shall" admit conditionally relevant evidence upon the introduction of "evidence sufficient to support a finding of the fulfillment of the condition." See Advisory Committee Notes on Fed.R.Evid. 104(b), Federal Criminal Code and Rules (West 1994), at 215. The rule does not speak to a level of confidence to which a jury must find the condition has been established. That, I presume the majority would reason, is a matter long since settled by the Texas caselaw. And the level of confidence dictated by our caselaw is not the same as that declared, essentially in *ipse dixit*, in *Huddleston*, supra, *viz:* by a preponderance of the evidence.[2] Rather, it is as it has always been, proof beyond a reasonable doubt, as estab-

lished by the many cases cited in the majority opinion that hold that jury instructions to that effect are necessary.

This is not an implausible argument (if it is, indeed, the majority's argument);[3] but it is not the only one. Arguments could be made, and should at least be entertained, that the Rules of Criminal Evidence contemplate the abolition of the caselaw requirement of a jury instruction that extraneous misconduct be shown to have been perpetrated by the accused to a level of confidence beyond a reasonable doubt before the jury may consider it. We have said that the new rules place a premium on the admission of relevant evidence—even that of "other crimes, wrongs, or acts," so long as that evidence is not proffered solely for inferences of character conformity. *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr.App.1990, 1991) (opinions on original submission and on Court's own motion for rehearing).

### Rules 404(b) and 104(a)

Under Tex.R.Cr.Evid., Rule 404(b) evidence of "other crimes, wrongs, or acts" having relevance apart from character conformity may be admissible for proper purposes, if there is any evidence from which a jury could rationally infer the accused committed it. Nothing in the text of Rule 404(b) suggests that any preliminary showing is necessary before such evidence may be introduced; it is subject only to general strictures of Tex. R.Cr.Evid., Rules 402 (hierarchical exceptions) and 403 (balancing special exclusions); Tex.R.Cr.Evid., Rule 104(a) does not require a preliminary finding by the court that the prosecution has proved the act to any level of

2. Justice Rehnquist cites only 21 C. Wright & K. Graham, Federal Practice and Procedure § 5054, p. 269 (1977), for the proposition that the trial court must decide under federal Rule 104(b) whether a jury could find the condition upon which admissibility of a conditional fact depends by a preponderance of the evidence. The Court had earlier determined that Rule 104(a) questions should be resolved by a preponderance standard, but expressly reserved the question of what standard should prevail under Rule 104(b). See *Bourjaily v. United States*, 483 U.S. 171, at 176, n. 1, 107 S.Ct. 2775, at 2779, n. 1, 97 L.Ed.2d 144, at 153, n. 1. While that portion of Professors Wright and Graham's treatise cited by Justice Rehnquist in *Huddleston*

does indeed opine that the trial judge should make a determination whether the jury could rationally find what it calls the "preliminary fact," it does not say he must determine that they could find that preliminary fact to any particular level of confidence. The Supreme Court thus appears to have imposed the preponderance standard *sans* authority, and without explanation.

3. *If* it is the majority's argument, it at least has the virtue of being responsive to the State Prosecuting Attorney's position that we should adopt the Supreme Court's construction of Fed.R.Evid., Rule 104(b) in *Huddleston*.

confidence. See *Huddleston v. United States,* 485 U.S. at 687–689, 108 S.Ct. at 1500–1501, 99 L.Ed.2d at 780–782. If there is any evidence of extraneous misconduct that would tend to make the existence of a fact of consequence more probable or less probable than it would be without that evidence (apart from character conformity) *if* the accused was the perpetrator, then *any* evidence the accused *was* the perpetrator makes that evidence "relevant." Tex.R.Cr. Evid., Rule 401. Any such evidence should therefore be admitted under Rule 402 ("All relevant evidence is admissible ...")—again, subject only to the determination whether, *inter alia,* if the inference that the accused perpetrated the offense is not a particularly compelling one, it ought nevertheless to be excluded because the probative value is substantially outweighed by the danger of unfair prejudice, under Rule 403.

It would be inconsistent with the emphasis on admissibility of relevant evidence to admit evidence of extraneous misconduct under the above scheme of rules and still instruct the jury that it must find that the accused committed the misconduct to a level of confidence beyond a reasonable doubt before it may give that evidence any probative value whatsoever. As long as the evidence is contemplated by Rule 404(b), relevant under Rules 401 and not more prejudicial than probative under Rule 403, and thus determined admissible pursuant to Rule 104(a); and as long as the jury is clearly instructed it must find all elemental facts to a level of confidence beyond a reasonable doubt, an instruction that it must also find some item of evidentiary fact to that same level of confidence before considering it is arguably superfluous. Neither due process and due course of law, nor

the rules themselves, remotely require it. Cf. *Santana v. State,* 714 S.W.2d 1 (Tex.Cr. App.1986) (due process does not require instruction at punishment phase of capital murder prosecution that jury must find accused committed extraneous offenses beyond a reasonable doubt before considering them in deliberations on special issues, so long as jury is clearly instructed it can only answer 'yes' if it finds beyond a reasonable doubt that special issues should be answered that way).

### Rules 404(b) and 104(b)

In contrast to determining preliminary questions of admissibility of evidence for purposes of Rule 404(b) under Rule 104(a), see *ante,* Rule 104(b) governs conditional admissibility of, *inter alia,* Rule 404(b) evidence of "other crimes, wrongs or acts." As the Supreme Court pointed out in *Huddleston:*

> "Evidence is admissible under Rule 404(b) only if it is relevant.... In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor. See *United States v. Beechum,* 582 F.2d 898, 912–913 (CA5 1978) (en banc). In the instance case, the evidence that petitioner was selling the televisions was *relevant* under the Governments's theory *only* if the jury could reasonably find that the televisions were stolen."

*Id.,* 485 U.S. at 689, 108 S.Ct. at 1501, 99 L.Ed.2d at 782 (emphasis added). Thus evidence of the extraneous offense was conditionally admissible subject to introduction of other evidence "connecting it up" with the requisite condition of fact.[4] In determining

---

4. As the advisory committee on proposed rule 104 explained:

"In some situations, the *relevancy* of an item of evidence, in the large sense, depends upon the existence of a particular preliminary fact.... [I]f a letter purporting to be from Y is relied upon to establish an admission by him, it has *no probative value* unless Y wrote or authorized it. Relevancy in this sense has been labelled '*conditional relevancy.*' Problems arising in connection with it are to be distinguished from problems of *logical relevancy,* e.g., evidence in a murder case that the accused on the day before purchased a weapon

of the kind used in the killing, *treated in Rule 401.*

"... Accepted treatment, as provided in the rule, is consistent with that given fact questions generally. The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. [But 'after all the evidence on the issue is in,' subject to further determination of the jury's role *vis a vis* the "fulfillment" issue.]"

Federal Criminal Code and Rules, (West 1994) at 215; *Huddleston,* supra, at 690, n. 7, 108 S.Ct. at

whether the proponent of the evidentiary item conditionally admitted has introduced sufficient evidence to fulfill the condition and thereby meet Rule 104(b), "the trial court neither weighs credibility nor makes a finding that the [proponent] has proved the conditional fact ...[; t]he court simply examines all of the evidence in the case and decides whether the jury could reasonably find the conditional fact," according to the Supreme Court, "by a preponderance of the evidence." *Ibid.*, at 690, 108 S.Ct. at 1501, 99 L.Ed.2d at 782–83. *If* the preponderance standard is somehow inherent in the language of Rule 104 itself,[5] it is arguably anomalous for this Court, having adopted the federal rule, to hold that jurors must yet be instructed to find the conditional fact beyond a reasonable doubt.

By these arguments the caselaw is anachronistic, and should be interred in favor of application of respective rules, reasonably construed under developing law.

We would best resolve these arguments, if not in *George* itself, then at least at the same time that we consider *George*. Instead, by essentially assuming in this cause an answer to the issue squarely raised in *George*, we pretermit any real analysis once we do come to resolve that petition. Indeed, it would not surprise me if the Court were to decide, consistent with its conclusory holding today, to dismiss the petition in *George* as having been improvidently granted. If the issue regarding jury instructions is really as cut and dried as the majority seems to think, it would appear we have put the State Prosecuting Attorney to the significant trouble of briefing *George* for naught.

## II.

Even if one does accept uncritically the premise that the jury must still be instructed to find the accused committed extraneous

misconduct beyond a reasonable doubt before considering it, it does not necessarily follow that the trial judge must determine a rational jury could find he did beyond a reasonable doubt as a predicate to admitting the evidence. This is a Rule 104(b) problem, and on its face the rule requires no such predicate. In the context of evidence of "other crimes, wrongs, or acts," Rule 104(b) mandates tentative admission of an evidentiary item (assuming it is otherwise admissible under Article IV of the Rules) so long as there is "evidence sufficient to support a finding [that the condition has been fulfilled]." But even as the plurality itself seems to recognize, Rule 104(b) does not prescribe a particular level of confidence by which it must be found that the condition has been fulfilled.[6]

In the absence of an articulated level of confidence in Rule 104(b), the majority holds that "beyond a reasonable doubt" is appropriate, at least in the extraneous misconduct context, because that is the level of confidence the caselaw requires the jury to have. The plurality believes "it makes no sense" to adopt a standard for admissibility of extraneous misconduct evidence that embraces a level of confidence requirement any less rigorous than that which we require of jurors themselves. Maj. op. at 158–59. "Presumably," the majority continues, "the standard of admissibility and the jury instruction were intended to mirror one another." *Id.* That, of course, entirely begs the question.

I do not read the cases culminating in the *McCann* "clear showing" test to prescribe a standard for admissibility that includes a determination by the trial court whether the jury could make a finding that the accused committed extraneous misconduct to any particular level of confidence—much less a finding of fulfillment of a requisite condition. The fact is, the standard of admissibility has never "mirrored" the jury instruction. The basis for the majority's contrary "presump-

1501–1502, n. 7, 99 L.Ed.2d at 783, n. 7, quoting 21 C. Wright & K. Graham, Federal Practice and Procedure § 5054, pp. 269–270 (footnotes omitted) (emphasis added).

5. But see n. 2, *ante.* Cf. *Bourjaily v. United States*, 483 U.S. 171, at 175, 107 S.Ct. 2775, at 2778, 97 L.Ed.2d 144, at 152 (1987) (The Federal Rules ... nowhere define the standard of proof

the court must observe in resolving [Rule 104(a)] questions.")

6. "Neither the federal nor Texas rules of evidence specify what quantum of proof governs admissibility when the relevancy of the evidence is contingent upon the fulfillment of a conditional fact under rule 104(b)." Maj. op. at 160.

tion" seems to consist only of some minimal cross-pollination between the admissibility cases and the jury charge cases, and one of several definitions of the word "clear" given in Black's Law Dictionary. But it seems to me the caselaw describing the standard for admissibility of extraneous misconduct describes what the character of the evidence must be before it may be admitted, not to what level of confidence it could reasonably persuade a jury. See, e.g., *Williams v. State*, 38 Tex.Cr.R. 128, 41 S.W. 645, at 648 (1897) ("... before evidence of an extraneous crime can be offered, some cogent evidence should be adduced of appellant's connection therewith...."); *Walton v. State*, 41 Tex. Crim. 454, 55 S.W. 566, at 567 (1900) ("... there should have been some testimony indicating with a reasonable degree of certainty that appellant was guilty" of the extraneous offense); *Denton v. State*, 42 Tex.Crim. 427, 60 S.W. 670 at 672 (1901) (same as *Walton*); *Glenn v. State*, 76 S.W. 757, at 758 (Tex.Cr. App.1903) (before evidence of extraneous misconduct can be admitted, "there must be pertinent testimony tending to show that appellant" is the one who committed it, citing *Williams*); *Fountain v. State*, 90 Tex.Crim. 474, 241 S.W. 489, at 491 (1921) (that accused committed extraneous offense "must be shown ... with reasonable certainty"); *Hooks v. State*, 97 Tex.Crim. 480, 261 S.W. 1053, at 1054–55 (1924) (Opinion on appellant's motion for rehearing) (same as *Glenn*); *Wells v. State*, 118 Tex.Crim. 355, 42 S.W.2d 607, at 608 (1931) (that accused perpetrated extraneous offense must be "satisfactorily shown" to justify admissibility); *Shepherd v. State*, 143 Tex.Crim. 387, 158 S.W.2d 1010, at 1011 (1942) (same as *Wells*); *Clark v. State*, 145 Tex.Crim. 63, 165 S.W.2d 747 (1942) (that accused perpetrated extraneous offense must be "shown"); *Carmean v. State*, 163 Tex. Crim. 218, 290 S.W.2d 240 (1956) (citing, at one point or another, all of the above); *Tomlinson v. State*, 422 S.W.2d 474 (Tex.Cr.App. 1968) (State must be "prepared to prove that the accused committed" extraneous misconduct); *Landers v. State*, 519 S.W.2d 115, at 118 (Tex.Cr.App.1975 (Opinion on State's motion for rehearing) (quoting 23 Tex.Jur.2d, Evidence, § 194, at p. 294, for the proposition that the accused must be "shown to have

been [the] perpetrator" of an extraneous offense before it can be admitted); *Fentis v. State*, 528 S.W.2d 590, at 592 (Tex.Cr.App. 1975) (that accused committed extraneous misconduct "must be shown with some degree of certainty before evidence of [it] can come in"); *Tippins v. State*, 530 S.W.2d 110, at 111 (Tex.Cr.App.1975) (before the State may introduce evidence of extraneous misconduct, it must be "prepared to clearly prove that the accused committed" it); *Eanes v. State*, 546 S.W.2d 312, at 315 (Tex. Cr.App.1977) (echoing *Tomlinson* and *Landers*).

When *McCann* crystallized these many articulations of the standard by which to measure admissibility of extraneous misconduct evidence into a "clear showing" test, it did not thereby incorporate a level of confidence component. Instead, the *McCann* test simply identified what the character of the evidence should be. That evidence must "show" or even "prove" does not necessarily suggest it must persuade to any specific extent, but simply that it provide sufficient substance to support an inference, and to support it "with *some* degree of certainty." The language of Rule 104(b) was neither intended to, nor on its face does it, change this "clear showing" standard.

I concur in the result reached by the majority. I do not indulge the majority's fiction, however, that in its first opinion in this cause the court of appeals was really applying a beyond a reasonable doubt standard, asking itself whether the trial court erred to conclude the jury could reasonably find beyond a reasonable doubt that appellant was the "Wesley" in the notebook in State's exhibit number 76. I would simply hold that the court of appeals applied the correct "clear showing" standard on original submission, and reinstate that judgment on authority of *Arcila v. State*, 834 S.W.2d 357 (Tex.Cr. App.1992).

Accordingly, I concur in the result, but not the opinion of the majority.

McCORMICK, P.J., joins this opinion.