TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00425-CR







Scott Eugene Sorrells, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0954457, HONORABLE JON N. WISSER, JUDGE PRESIDING







On July 19, 1995, appellant Scott Eugene Sorrells fatally stabbed Larry Fletcher, a woman
with whom he had been having an on-and-off relationship. The offense was committed in the home of Zeda
Cottom, an elderly invalid for whom Fletcher worked as a live-in nurse. The assault was witnessed by a
neighbor, who called the police and emergency medical personnel. Fletcher, who was stabbed eight times,
died before reaching the hospital but not before she named appellant as the attacker. Appellant testified
that he and Fletcher argued and that she attacked him with the knife. In the ensuing struggle, he took the
knife from Fletcher and "just started hitting her." The jury was instructed on self-defense, but found
appellant guilty of murder and assessed punishment, enhanced by two previous felony convictions, at
imprisonment for seventy years. Tex. Penal Code Ann. § 19.02 (West 1994). We will affirm.

Appellant's four points of error relate to the testimony of Austin police officer Dusty
Hesskew, and to exhibits introduced through him. Hesskew testified that Fletcher filed a stalking complaint
with the police on June 19, one month before she was killed. The complaint came to Hesskew's attention
on July 10, and he sent a responsive letter to Fletcher on July 18. Hesskew identified State's exhibits 33,
33A, and 33B as the envelope, letter, and enclosure he mailed to Fletcher. Exhibit 33A is a preprinted
form letter acknowledging receipt of the complaint and stating that the "charge of stalking cannot be filed
for the following reason(s): . . . [check mark] Contact this office for a sworn affidavit." At the bottom of
the letter, Hesskew wrote, "Please fill out the enclosed form and return it to me." Exhibit 33B is a one-page questionnaire entitled "questions pertaining to history of the suspect." None of the questions had been
answered. The envelope and its contents were found in Fletcher's bedroom. The evidence does not reflect
who Fletcher named in her stalking complaint.

Hesskew was asked by the prosecutor to describe the offense of stalking "as in this case."
Hesskew replied, "According to the law, stalking consists of harassment, either by telephone, by mail, or
by following an individual around. This occurs not only at the home but at the workplace as well. It has
to occur on more than one occasion. You also have to have some type of direct threat involved; in other
words, a threat to burn a house down, a threat to kill you, a threat to assault you, something along that line." 


Appellant contends in point of error one that Hesskew's testimony and the accompanying
exhibits were not admissible because there was no proof that the extraneous stalking offense in fact
occurred or that appellant was the guilty party. See Harrell v. State, 884 S.W.2d 154, 160 (Tex. Crim.
App. 1994); Eanes v. State, 546 S.W.2d 312, 314-15 (Tex. Crim. App. 1977); Tippins v. State, 530
S.W.2d 110, 111 (Tex. Crim. App. 1975). In point of error two, appellant argues that the probative value
of the challenged evidence was substantially outweighed by the danger of unfair prejudice. Tex. R. Crim.
Evid. 403. And in points of error three and four, appellant contends that Hesskew's testimony and the
documentary exhibits were inadmissable hearsay. Tex. R. Crim. Evid. 802. We do not address the merits
of these contentions because we conclude that any error in the admission of the evidence was harmless in
light of the other evidence presented to the jury without objection.

Verna Stegall, Fletcher's sister, testified that Fletcher and appellant lived with her during
the first half of 1995. In May of that year, Fletcher ended her relationship with appellant and he moved
out of the house, but the two continued to see each other "off and on." After the breakup, appellant visited
Stegall and told her that he had followed Fletcher and knew she was seeing another man. Appellant urged
Stegall to talk to Fletcher and ask her to "come back" to appellant. Appellant also told Stegall, "Larry is
going to make me hurt her." Stegall testified that appellant "was always thinking she was going with
someone" and was "very upset" with this. Stegall was of the opinion that appellant wanted Fletcher "to
himself" and "withdrawn from people."

After Fletcher began working for Cottom, she told Stegall that appellant came to the
Cottom house and pounded on the door, and that Fletcher threatened to call the police. Stegall also
testified that Fletcher visited appellant at his aunt's house in May or June 1995. When she returned, she
had bruises on her back, arms, and leg. On another occasion, Stegall was called to the same location
where Fletcher and appellant were having an argument. When Stegall arrived, appellant was holding
Fletcher's arms behind her back to prevent her from leaving. Fletcher's other sister, Kathy Brown, testified
that she saw bruises on Fletcher's leg during the time she was dating appellant. 

Fletcher's friend Rachel Hardeman described another incident that occurred at the
residence of appellant's aunt. In early January 1975, Hardeman was called to the house to get Fletcher. 
When Hardeman arrived, she saw appellant and Fletcher standing outside with two police officers. 
Fletcher's face was scratched and her lip was cut. Hardeman also testified that she twice saw Fletcher with
a black eye during the time she was living with appellant. Hardeman said that Fletcher once told her that
appellant would kill her.

Coffee Frank Davis dated Fletcher during the last weeks of her life. He testified that
Fletcher showed him scars on her back where she said appellant "stomped and kicked her." On June 19,
appellant called Davis and said "he wanted the bitch to leave him alone and that he was going to kill her
and me both." Davis reported this call to the police. Davis also discussed the call with Fletcher, who told
him that appellant "came to her job and asked for money." Fletcher told Davis that she "threw food stamps
or something out in the yard to him and just closed the door back because she was afraid of him."

Appellant argues that the term "stalking" is inherently inflammatory and carries great
potential to impress a jury in an irrational way. See Montgomery v. State, 810 S.W.2d 372, 390 (Tex.
Crim. App. 1991) (opinion on rehearing). Appellant notes that the State referred to stalking in its jury
arguments at both stages of trial. (1) The testimony summarized above, however, painted a picture of
appellant as a jealous and violent person who physically abused Fletcher, followed her, and threatened to
kill her. According to the State's witnesses, Fletcher feared appellant and attempted to end her relationship
with him. This testimony fully supported the inference that appellant stalked Fletcher. In light of this
testimony, the challenged evidence that Fletcher filed a stalking complaint to which the police responded
by sending her a questionnaire pales in significance. We are convinced beyond a reasonable doubt that
the State's other evidence dissipated the effect of the challenged evidence to such a degree that it did not
contribute to appellant's conviction or sentence. See Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim.
App. 1989) (standards for applying former Tex. R. App. P. 81(b)(2)). It follows that appellant has not
shown that the introduction of the challenged evidence, if error, affected his substantial rights. Tex. R. App.
P. 44.2(b).

The points of error are overruled and the judgment of conviction is affirmed.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: November 6, 1997

Do Not Publish
1. The prosecutor asked the jury to return a guilty verdict on behalf of Larry Fletcher and "all the
women that suffer from the men who stalk them and abuse them and sometimes murder them." A guilty
verdict, said the prosecutor, would "make a better world, a world in which a woman cannot be stalked and
murdered." At punishment, the prosecutor referred to appellant as "[a] man who stalks and butchers a
woman."



er, testified that