PD-0263-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/8/2015 4:00:35 PM
Accepted 4/15/2015 12:41:26 PM
ABEL ACOSTA
CLERK

**PD-0263-15**

IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# DETRA PHILLIPS WEBSTER
*APPELLANT*

vs.

# THE STATE OF TEXAS
*APPELLEE*

---

FROM THE FIFTH COURT OF APPEALS
CAUSE NO. 05-12-00854-CR

APPEAL FROM THE 204TH DISTRICT COURT
OF DALLAS COUNTY, CAUSE NO. F10-60721-Q

---

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

April 15, 2015

ABEL ACOSTA, CLERK

## Ground for Review

Whether the court of appeals ignored the facts and law to arrive at its desired conclusions that an extraneous offense was properly admitted and not harmful

# Table of Contents

Ground for Review ........................................................................................ 2

Index of Authorities.................................................................................... 4

Identity of Parties and Counsel ................................................................ 5

Statement Regarding Oral Argument....................................................... 6

Statement of the Case and Procedural History ....................................... 7

Argument ..................................................................................................... 9

    The court of appeals ignored the facts and law to arrive at its desired conclusions that an extraneous offense was properly admitted and not harmful ..................................................................................................... 9

        I.  The court of appeals's holding ...................................................... 9

        II.  The court ignored the facts in holding that the alleged extraneous offense was properly admitted ..................................... 10

        III. The court of appeals ignored the law in holding that Webster was not harmed, regardless........................................................... 13

Prayer...................................................................................................... 14

Certificate of Service ............................................................................. 16

Certificate of Compliance....................................................................... 16

Appendix ................................................................................................. 17

# Index of Authorities

**Cases**

*Delay v. State*, --- S.W.3d ---, No. PD-1465-13, 2014 WL 4843911 (Tex. Crim. App. Oct. 1, 2014) (Meyers, J., dissenting) ......................... 12, 14

*Fahy v. Connecticut*, 375 U.S. 85, 88 (1963).............................................. 13

*Garza v. State*, No. 06-14-00054-CR, 2014 WL 5490947, \*3 (Tex. App.—Texarkana Oct. 30, 2014) ...................................................................... 13

*Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994)................. 9

*Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.—Corpus Christi 2009, pet. ref'd)....................................................................................................... 13

*Webster v. State*, No. 05-12-00854-CR, 2014 WL 6873136 (Tex. App.—Dallas Dec. 8, 2014) ............................................................... 8, 10, 11, 13

**Statutes**

TEX. PEN. CODE § 22.02(b) ........................................................................ 8

## Identity of Parties and Counsel

For Appellant Detra Phillips Webster:

    LISA A. FOX
        *Trial counsel of record*
    LAW OFFICE OF LISA A. FOX
    6565 North MacArthur Boulevard, Suite 225
    Irving, Texas 75039

    BRUCE ANTON
    BRETT E. ORDIWAY
        *Appellate counsel of record*
    SORRELS, UDASHEN & ANTON
    2311 Cedar Springs, Suite 250
    Dallas, Texas 75201
    ba@sualaw.com
    bordiway@sualaw.com

For Appellee the State of Texas:

    SOINKNE M. LEWIS
    FARHEEN S. JAN
        *Trial counsel of record*
    DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
    133 North Riverfront Boulevard
    Dallas, Texas 75207

    MARISA ELMORE
        *Appellate counsel of record*
    DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

    THE HONORABLE LENA LEVARIO
    204TH JUDICIAL DISTRICT COURT

## Statement Regarding Oral Argument

Oral argument is waived.

## Statement of the Case and Procedural History

Webster's brother Otis [1] re-routed their disabled sister Katrina's social security checks to his address. (RR7: 35-36). Otis claimed that when Webster learned of this, she stabbed him. (RR7: 38, 99). Webster claimed, however, that Otis became enraged when Katrina would not accompany him to the bank, and, blaming it on Webster's influence, he attacked Webster with an iron. (RR8: 171-179, 195). Webster maintained that she only stabbed Otis in self-defense. (RR8: 187-188).

Though only Otis's wife supported his version of events, while Katrina and Webster's children vouched for Webster's, Webster was indicted on October 14, 2010, for aggravated assault with a deadly weapon of a family member. (RR7: 152-153; 209-211, 249-251, 286-287; RR8: 24, 32, 35, 59); (CR: 13); *see* TEX. PEN. CODE § 22.02(b). Webster initially pleaded guilty to the charge, but, when she explained to the trial court that Otis had attacked her first, the court refused to accept her plea and set the case for a jury trial. (RR2: 9; RR3: 28). The jury ultimately found Webster guilty and sentenced her to 10 years' imprisonment. (CR: 85).

---

[1] Because all relevant persons are related to Webster, they will be referred to by their given names.

7

On appeal to the Fifth Court of Appeals, Webster argued that the trial court abused its discretion by admitting extraneous offense evidence, and that the admission of such evidence was harmful. *Webster v. State*, No. 05-12-00854-CR, 2014 WL 6873136 (Tex. App.—Dallas Dec. 8, 2014). The court overruled her contention and affirmed her conviction in an opinion released December 8, 2014. *Id*. Webster then filed a motion for rehearing, which the court denied on February 9, 2015.

## Argument

> The court of appeals ignored the facts and law to arrive at its desired conclusions that an extraneous offense was properly admitted and not harmful

❖   ❖   ❖

## I.   The court of appeals's holding

In Webster's opening brief on appeal, she urged the court that the trial court abused its discretion in admitting extraneous offense evidence—specifically, that she had previously stolen from Katrina's bank account—because it had not been proven beyond a reasonable doubt. (Ap. Br. at 9) (citing RR7: 16-17, 35-36; *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994) ("in deciding whether to admit extraneous offense evidence in the guilt/innocence phase of trial, the trial court must, under rule [of evidence] 104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense.")). The only evidence that Webster did came from the highly motivated Otis, while Katrina herself testified she gave Webster permission to withdraw money from her bank account, and moreover that, if anyone had stolen from her, it was Otis's wife. (Ap. Br. at 9) (citing

9

RR8: 39, 73-74). Webster further contended the erroneous admission was harmful for exactly those reasons for which the evidence was admitted: it turned a "he said, she said" case into one in which Webster had a clear motive for assaulting Otis. (Ap. Br. at 13-14). Because this error plainly affected Webster's substantial rights, she respectfully requested the court to reverse and remand this case for a new trial. (Ap. Br. at 14).

The court of appeals disagreed, determining that, despite Katrina's testimony, a jury "could have" found the theft proved beyond a reasonable doubt, and that, regardless, she was not harmed, because the jury "could have" found Webster guilty without the evidence. *Webster v. State*, No. 05-12-00854-CR, 2014 WL 6873136, *5 (Tex. App.—Dallas Dec. 8, 2014). In so doing, the court both ignored the facts and the law.

## II. The court ignored the facts in holding that the alleged extraneous offense was properly admitted

In determining that, despite Katrina's testimony, a jury "could have" found the theft proved beyond a reasonable doubt, the court of appeals reasoned that a jury "could have… concluded Katrina was unaware of [Webster] taking money from her on numerous other conclusions" because "her account was short on funds to take care of her own

10

needs after she loaned Detra her debit card." *Id.* Alternatively, the court reasoned that jury could have "simply concluded Katrina lied." *Id.* If so, the court figured, the remaining evidence indeed supported the inference that Webster stole from Katrina. *Id.*

This is an entirely unreasonable view of the record. There is nothing in the record that indicates Katrina was oblivious, or lied. As to the former, that Webster "drained" Katrina's bank account when she gave Webster her debit card to get her car fixed is not evidence of theft—it's evidence the repairs were costly, or that Katrina's bank account had a low balance to begin with. (RR8: 55-56). And more importantly—and as maintained by Webster in her brief on appeal—Katrina explicitly insisted Webster had not stolen from her:

| | |
|---|---|
| Defense counsel: | Okay. Now, there's been some allegations that [Webster] had been taking your money. Had she been taking your money? |
| Katrina: | No. |
| Defense counsel: | Did you give her permission to have any money needed? |
| Katrina: | Yeah. |
| Defense counsel: | Okay. And did you let her have money for car repairs and things like that? |

11

| Katrina: | Yeah. |
|---|---|
| Defense counsel: | And so if someone said she was stealing your money, is that true or not true? |
| Katrina: | Not true. |

(RR8: 39). This exonerating testimony followed Katrina accusing Otis and his wife of stealing from her. (RR8: 38-39). As to the latter, the court, unsurprisingly, pointed to nothing at all.

Judge Meyers recently lamented that "[y]ou can always tell when an opinion is written with the outcome decided before any legal analysis is done because it reads like a medical report written by a doctor who has never conducted a physical examination of the patient." *Delay v. State*, --- S.W.3d ---, No. PD-1465-13, 2014 WL 4843911 (Tex. Crim. App. Oct. 1, 2014) (Meyers, J., dissenting). And just like in that case, "this is precisely how the… opinion in this case comes across." *Id.* The opinion simply "ignored the facts in order to arrive at a desired outcome." *Id.* Accordingly, Webster respectfully requests this Court to grant this petition so that it may reverse the decision of the court of appeals and hold that the trial court erred in admitting evidence of the alleged extraneous offense.

## III. The court of appeals ignored the law in holding that Webster was not harmed, regardless

Because the court of appeals also held that, regardless, the admission of the evidence was not harmful, however, this Court must examine that conclusion, too.

It is equally strained. As to the harm imparted by the trial court's error, the court of appeals held that Webster was not harmed by the admission of the extraneous offense because: "While we agree with [Webster] that the State relied on the theft as a motive for [Webster] to attack Otis, the record shows that even without that evidence, the jury *could* have discounted [Webster's] self-defense claim." *Webster*, 2014 WL 6873136 at *6 (emphasis added).

In evaluating harm, though, the reviewing court is not to be "concerned with whether there was sufficient evidence on which [Webster] could have been convicted, but rather, whether there is a reasonable possibility the impermissible testimony might have contributed to the conviction." *Garza v. State*, No. 06-14-00054-CR, 2014 WL 5490947, *3 (Tex. App.—Texarkana Oct. 30, 2014) (citing *Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.—Corpus Christi 2009, pet. ref'd)); *see also Fahy v. Connecticut*, 375 U.S. 85, 88 (1963)). Just as the court "ignored the facts

in order to arrive at a desired outcome" in its discussion of the merits of the issue, then, it also "changed the law" in its evaluation of whether Webster was harmed by the error. *See Delay*, --- S.W.3d ---, 2014 WL 4843911 (Meyers, J., dissenting). Because the court of appeals should, of course, do neither, Webster further respectfully requests this Court to grant this petition for discretionary review so that it may reverse and remand this case to the court of appeals to conduct the proper harm analysis.

## Prayer

Webster respectfully requests this Court to grant this petition so that it may: (1) reverse the decision of the court of appeals and hold that the trial court erred in admitting evidence of the alleged extraneous offense; and (2) remand this case to the court of appeals to conduct the proper harm analysis.

Respectfully submitted,

/s/ Bruce Anton
BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com

_____/s/ Brett Ordiway_____

BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Appellant*

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on April 8, 2015.

/s/ Bruce Anton
BRUCE ANTON

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this petition contains 1,122 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

/s/ Bruce Anton
BRUCE ANTON

# Appendix



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00854-CR

**DETRA PHILLIPS WEBSTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F10-60721-Q**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Bridges

A jury convicted appellant Detra Phillips Webster of aggravated assault with a deadly weapon of a family member and sentenced her to ten years' imprisonment. On appeal, she argues the trial court abused its discretion by admitting extraneous offense evidence, and the admission of such evidence was harmful. We affirm.

## Background

On September 16, 2012 Detra was at home, where she lived with her two sons, De'Jaun and Deveion,[1] and her disabled sister, Katrina. Earlier in the day, Otis, the complainant and Detra's older brother, picked up De'Jaun and took him to a court appearance. When they

---

[1] Deveion was sixteen at the time of trial and De'Jaun was fourteen.

returned later in the afternoon, De'Jaun and Otis went inside the home so Otis could pick up his mother's bills for Charlot, his wife, to pay.

The events that happened next were disputed at trial by Otis, Detra and other family members that testified. Otis and Charlot testified to the following events.

On this particular day, Otis had Katrina's social security check with him. In the past, the check was direct deposited into Katrina's bank account, but because Otis suspected Detra was withdrawing and spending the money to support her drug habit, he changed the checking delivery method so that Katrina's check was mailed to him. Otis claimed Katrina knew he changed the address so that he would receive the check.

Otis asked Katrina if she wanted to go with him to cash her check. Detra told Katrina Otis planned to take her back to a nursing home if she went with him.[2] Katrina then refused to leave with Otis. He showed Katrina the check, and upon seeing the check, Detra picked up a knife from the table and starting coming towards Otis. He yelled to Charlot to come inside. According to both Otis and Charlot, when Charlot got to the door, Detra came at her with a knife. Charlot testified Detra said, "I'm gonna kill that bitch anyway." Charlot then ran back to the car and called the police.

After Charlot ran out, Detra ran towards Otis with the knife in one hand and an iron in the other hand. Otis grabbed the iron and that is when Detra stabbed him multiple times in the chest area and near the permanent shunt in his left arm used for dialysis. His injuries, which included a collapsed lung, resulted in a two-week hospital stay.

Otis admitted they were "cussing" at each other before the stabbing, and he told Detra "that crack is killing you." Otis also admitted he swung the iron and hit Detra in the head;

---

[2] Katrina had suffered several strokes and heart attacks and was unable to care for herself. She was unable to walk on her own, but she could speak. Otis's wife testified she was unable to make decisions on her own. She was described as "very slow, as far as mentally."

however, he claimed that was the first time on that day he showed any aggression towards her. He adamantly denied being the first aggressor. He testified Detra threatened to "kill" his "handicap ass." De'Jaun and Deveion eventually pulled Otis from the couch where he had fallen and took him outside where they waited for officers and paramedics to arrive.

The responding officer took Deveion's statement shortly after the incident. Deveion said Otis and Detra were fighting over Detra stealing all of Katrina's money because "that's what my uncle came into the house saying." Detra became violent, and she grabbed the iron and knife and started swinging. In his statement to police, Deveion did not say Detra picked up the knife only after Otis threatened her. In fact, he never told officers Otis allegedly threatened her or acted as the first aggressor.

Officers arrested Detra because after interviewing multiple witnesses, no one ever said she acted in self-defense. Rather, the consensus seemed to be that Detra became angry about money and attacked.

At trial, however, Deveion told a different story. He testified Otis was the aggressor, and Detra tried to back away and leave the situation but Otis continued to follow and yell at her. When she felt threatened, she grabbed the knife and stabbed it into the table. Otis eventually backed her into a corner towards the couch, she grabbed the knife again, and she fell back swinging the knife. The knife went into Otis as she fell.

Deveion admitted family members had gotten together to discuss their testimony in the case. He also admitted Detra told him his testimony was very important because it was "going to win this case."

Katrina testified that when Otis first walked into the house, he immediately started "fussing" about cashing her check. At the time, Katrina said she was unaware Otis had rerouted her check.

When Otis asked if Katrina wanted to go with him, she said no because she thought Charlot had already cashed the check. Katrina denied that Detra said anything about Otis taking her back to a nursing home if she left with him. Rather, she said Otis told her she could "stay here in this mess," referring to Detra's drug habit. Katrina testified Otis became angry when she would not leave with him, and he started following Detra around fussing at her. While she could not remember exactly what he said, Katrina was certain he made threats towards Detra. She said that was when Detra grabbed the knife off the table. Otis continued towards Detra, and "she stuck him." She also claimed Otis hit Detra with the iron before the stabbing occurred.

Katrina said the allegations about Detra taking money were not true, but rather she had given Detra permission to take any money she needed. However, she also recalled giving Detra her debit card because Detra needed to fix her car and shortly thereafter, her money was drained from her account. Katrina thought Detra had taken all the money. Katrina later clarified she had no problem helping her sister, and any money Detra took, she took with Katrina's approval.

Detra testified in her own defense and claimed Otis came into the house in a rage and was cursing and name calling. She claimed neither she nor Katrina knew Otis had rerouted the social security check until that day when he showed it to them. Detra said Otis kept walking towards her as she continued to walk away. He was saying things like, "you taking Trina's money out the bank, and, bitch this and crack head this and you doing this and you're doing that, . . . ." Detra claimed Otis called Charlot to come "whoop [her] ass." Detra picked up the knife on the table and told him "don't try this." She stuck the knife in the table so he would know she was serious. Detra denied threatening Charlot when she came into the house.

Because Otis kept following her, she pulled the knife out of the table. Detra claimed he kept walking closer and closer. She testified he hit her and she fell against a wall, knocking pictures off. However, the State admitted pictures taken on the day of the incident, which

–4–

showed a wall of pictures intact with no sign of shattered glass in the area. When she fell back into the couch, Detra said she started swinging the knife (because she was falling and Otis was choking her) and she stabbed him. Despite her allegations that Otis choked her and she fell against a wall, officers did not see any visible injuries on her. Detra testified no one from the Dallas Police Department ever interviewed her, and the trial was the first opportunity to tell her side of the entire story.

When questioned about Katrina's bank account, Detra admitted to posing as her sister on one occasion. She also admitted a bank employee questioned her when she tried to withdraw money because the employee did not recognize her as Katrina. However, she denied stealing money from Katrina, and argued Katrina gave her the wallet to get money when needed. She admitted to taking money from Katrina's account more times than she could remember.

She denied using Katrina's money to support her crack habit. However, she admitted to using crack a few days before the incident.

Tausha Johnson, the manager of First Convenience Bank, testified as a rebuttal witness for the State. She testified that Otis and Charlot came into the bank in September of 2010 disputing some fraudulent transactions on Katrina's bank account. They said Detra was taking money from the account, and Tausha told them to file a police report. Tausha also explained Katrina's account had a note stating to be cautious because someone was "doing unauthorized items on the account." Otis and Charlot reviewed bank security footage and confirmed Detra was the person making repeated withdrawals on Katrina's account.

Tausha testified about the time Detra posed as Katrina and was detained. When questioned about her identity, Detra claimed she looked different with a ponytail, and she had lost weight from being in the hospital. Tausha said she called the police, but Detra left before the police arrived. Tausha testified to knowing of two fraudulent transactions on Katrina's account.

Upon further questioning from defense counsel, Tausha admitted she did not know if Katrina had given Detra permission to withdraw money, but she explained Detra could not legally withdraw money because her name was not on the account and it did not matter if she had permission. Tausha reiterated it was against the law for a person to represent herself as someone with an account when they are not that person.

The jury rejected Detra's self-defense claim and found her guilty of aggravated assault with a deadly weapon. The trial court found she used or exhibited a deadly weapon, a knife, during the commission of the offense, and that the offense involved family violence. She received a ten-year sentence. This appeal followed.

### Standard of Review and Applicable Extraneous Offense Law

We review a trial court's decision to admit or exclude extraneous offense evidence for an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will affirm a trial court's ruling that an extraneous offense has relevance apart from proving conformity with the defendant's character if the ruling is within the zone of reasonable disagreement. *Id*. Likewise, we give deference to a trial court's determination that the probative value of the evidence is not outweighed by the danger of unfair prejudice. *Id*.

A defendant may not be tried for a collateral crime or for being a criminal generally, and rule 404(b) prohibits the admission of extraneous offenses to prove a defendant's character or to show that the defendant acted in conformity with the character. TEX. R. EVID. 404(b). But extraneous offenses may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*.

In deciding whether to admit evidence of an extraneous offense, the trial court must determine the "the jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994)

(en banc); *see also Thompson v. State*, 4 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Then, as the sole judge of witness credibility, it is up to the jury to decide conflicts in evidence and determine if the State proved an extraneous offense beyond a reasonable doubt. *Thompson*, 4 S.W.3d at 886; s*ee also Collins v. State*, No. 01-12-00238-CR, 2014 WL 1318882, at *11 (Tex. App.—Houston [1st Dist.] Mar. 31, 2014, pet. ref'd) (mem. op., not designated for publication).

Here, the State offered the extraneous offense of theft to establish Detra's motive for stabbing Otis because she became enraged when she learned he had rerouted Katrina's social security check. To prove theft under Texas Penal Code section 31.03(a), the State must prove a defendant "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). Appropriation of property is unlawful if it is without the owner's effective consent. *Id*. § 31.03(b). Elements of theft may be proved by direct or circumstantial evidence. *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (op. on reh'g).

**Discussion**

In her sole issue, Detra does not argue the evidence was inadmissible to prove motive or perhaps same transaction contextual evidence, but rather "assumes for the sake of argument" the extraneous offense evidence was admissible. Detra's complaint focuses on the State's alleged failure to prove she committed a theft beyond a reasonable doubt, and therefore, she was harmed by admission of the evidence.

Detra specifically focuses on the State's failure to prove the offense beyond a reasonable doubt because Katrina testified Detra had permission to use any money she needed. And while the State characterizes Detra as "draining" Katrina's checking account, Detra responds this is not

evidence of theft, but rather evidence that Detra's needs were costly or Katrina's account was low to begin with.

Detra further challenges the State's reliance on her own admission and the testimony from the bank manager that Detra repeatedly withdrew funds from Katrina's account, and even did so dressed in disguise on one occasion. While she acknowledges it may be against the law to pretend to be someone and withdraw money from an account, she argues, "In light of Katrina's insistence that she gave [Detra] permission to withdraw money from her account, that she misled the bank while doing so in no way provides evidence beyond a reasonable doubt" that she was stealing from Katrina. As she repeatedly argues, Katrina gave her consent to use money she needed. Thus, Detra contends the only evidence that Detra stole from Katrina came from the "highly motivated Otis, and Katrina specifically refuted the accusation."

Detra encourages the Court to reject the State's invitation to rely on the conflicting evidence the jury "could" have resolved in its favor because "it was the trial judge, not the jury, who erroneously admitted the evidence." However, in cases where an appellant has challenged whether the State proved an extraneous offense beyond a reasonable doubt, the reviewing court has deferred to the jury as the sole judge of witness credibility and its role in resolving conflicting evidence. *Thomspon*, 4 S.W.3d at 886; s*ee also Collins v. State*, No. 01-12-00238-CR, 2014 WL 1318882, at *11 (Tex. App.—Houston [1st Dist.] Mar. 31, 2012, pet. ref'd) (mem. op., not designated for publication). For example, in *Fanniel v. State*, the defendant was tried for aggravated robbery, and the prosecution admitted extraneous offense evidence of a prior burglary to demonstrate a common scheme or plan as to the current offense. *Fanniel v. State*, No. 01-00-00732-CR, 2002 WL 467158, at *1 (Tex. App.—Houston [1st Dist.] Mar. 28, 2002, pet. ref'd) (not designated for publication). On appeal, the defendant argued, among other things, that the prosecution did not prove the extraneous offense because he offered two alibi

witnesses who accounted for his whereabouts on the night of the alleged extraneous offense burglary. *Id*. at *3. The reviewing court concluded that the jury, after considering all the evidence and resolving any conflicts, could have found beyond a reasonable doubt that the defendant committed the extraneous offense despite alibi witnesses. *Id*.

Similarly, in *Collins v. State*, the court concluded that simply because one eyewitness could not positively identify the defendant as the robber in an extraneous offense, the witness's lack of positive identification did not refute another witness's positive identification of him for purposes of proving the offense beyond a reasonable doubt. *Collins*, 2014 WL 1318882, at *11. It was up to the jury to decide whose testimony to believe, despite any discrepancies. *Id*.

Here, after reviewing the evidence presented, we agree with the State the jury was free to weigh the conflicting testimony and could have found it proved the theft beyond a reasonable doubt. While the record is clear Katrina testified Detra had permission to use her money, we do not believe this alone supports Detra's claim that the State failed to prove the theft beyond a reasonable doubt.

For example, the record shows Detra repeatedly withdrew money from Katrina's account, and even dressed up as Katrina on one occasion in which she was detained by the bank manager, but left before the police arrived. The jury could infer a guilty conscious based on this action. And while Katrina testified she gave Detra permission to use money when she needed help, Katrina testified that her account was short on funds to take care of her own needs after she loaned Detra her debit card. From this, the jury could have concluded Katrina was unaware of Detra taking money from her on numerous other occasions. This is further supported by the fact that the jury heard testimony and witnessed for themselves that Katrina had physical and potential mental disabilities. The jury could have also simply concluded Katrina lied about giving Detra permission to take her money.

–9–

Moreover, Otis, whose name was also on the account, reported unauthorized transactions to the bank and later identified Detra in video footage. The bank made a note on the account to be "cautious, someone is doing unauthorized items on this account." The jury could conclude this circumstantial evidence further supported the State's claim that Detra unlawfully appropriated property. Accordingly, we conclude the trial court did not abuse its discretion by admitting the extraneous offense evidence.

However, even if we assumed the trial court abused its discretion, we would conclude Detra has failed to establish harm. Detra contends the admission of the extraneous offense turned a "he said, she said" case into one in which Detra had a clear motive to attack Otis, thereby tipping the scales in favor of the State for the jury to believe Otis's "uncorroborated tale" and discount her self-defense claim. We do not agree.

The erroneous admission of an extraneous offense is nonconstitutional error. *Johnson v. State*, 84 S.W.3d 726, 729 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Texas Rule of Appellate Procedure 44.2(b) states that any error, other than constitutional error, that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). In other words, we disregard the erroneous admission of evidence if it did not adversely affect the jury's verdict, or had but a slight effect on the jury's verdict. *Johnson*, 84 S.W.3d at 729.

While we agree with Detra that the State relied on the theft as a motive for Detra to attack Otis, the record shows that even without that evidence, the jury could have discounted Detra's self-defense claim.

Otis suffered from renal failure and required dialysis three times a week. He testified he had received dialysis for the past five years and, "that's just about all I do. Go and go to bed." The jury could assess his physical limitations and conclude that while he certainly argued, "cussed," and called Detra names, he was not the first aggressor.

The jury could easily dismiss Detra's claims that Otis choked her and pushed her into a wall causing pictures to crash to the ground. The State introduced testimony from a responding officer that Detra had no injuries on the day of the incident indicating she had been choked, and a picture admitted into evidence showed a wall with pictures in place. Thus, the evidence undermined Detra's credibility and the likelihood that the jury would believe her version of the events.

While Detra attempts to distance from Deveion's incriminating statement given on the day of the incident and rely only on his trial testimony in which he accused Otis of first attacking Detra, the jury was free to disbelieve his testimony. The jury could determine Deveion was not credible because he admitted that he, along with other family members, met and discussed how he would testify. Deveion also admitted talking to Detra and Detra telling him that his testimony was important because it was going to win the case for her. Thus, with Otis's testimony that Detra was the first aggressor and Deveion's written statement in which he said Detra "didn't listen and picked up a knife" and ". . . my mother picked the iron and knife and began to swing," the jury heard more than Otis's "uncorroborated tale." Rather, they heard Deveion's account of the events on the day in question and the glaring omission that Otis was supposedly the first aggressor.[3]

---

[3] Deveion's full written statement reads as follows:

> The fight started with a arrgerrment [*sic*] between my mother and uncle. They arrgerment [*sic*] was because of my aunt. My uncle told my mom that she was steeling all my aunt [*sic*] money out of the bank and was mad because my aunt didn't want to go to his house. So he said you can stay here with this mess. My mom then got mad and said what do you mean this mess. Leave the situation was what I told my mother. She didn't listen and picked up a nife [*sic*]. The arrgerment [*sic*] got even more heated and they got to [*sic*] close then my uncle said if she stabed [*sic*] him they would call 5,0. He then called his wife she came to the door talking bout [*sic*] what she was gona [*sic*] do to my mom. She opened the door saw the nife [*sic*] and ran to the car and called the police. The fight began my mother picked the iron and nife [*sic*] and began to swing. She stabed [*sic*] my uncle 3 times and cut him. My Uncle grabbed the iron and me and my brother toke [*sic*] him outside and that's when the police arrived.

Accordingly, we conclude Detra has failed to show the admission of the extraneous offense "tipped the scales" in favor of the State and adversely affected the jury's verdict resulting in harm.  Her sole issue is overruled.

**Conclusion**

The judgment of the trial court is affirmed.


Do Not Publish                                        /David L. Bridges/
TEX. R. APP. P. 47                          DAVID L. BRIDGES
120854F.U05                                     JUSTICE

–12–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

DETRA PHILLIPS WEBSTER, Appellant

No. 05-12-00854-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F10-60721-Q.
Opinion delivered by Justice Bridges.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered December 8, 2014.