**AFFIRM AS MODIFIED; Opinion Filed March 1, 2024**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-22-00680-CR**
**No. 05-22-00686-CR**

**HECTOR ANGUIANO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-76221-X, F17-76222-X**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Kennedy
Opinion by Justice Kennedy

On the Court's own motion, we withdraw the opinion of January 23, 2024, and vacate the judgments of that date. The following is now the opinion of the Court.

Hector Anguiano appeals his convictions for aggravated sexual assault of a child. In his first issue, appellant argues the trial court violated his right to due process by incorrectly defining the reasonable-doubt standard during jury selection and simultaneously commenting on the weight of the evidence. In his third issue, appellant urges the trial court abused its discretion by allowing extraneous-offense evidence to be heard by the jury. In his second and fourth issues, appellant contends

his trial counsel was ineffective in failing to object or otherwise properly preserve his first and third issues. In his fifth issue, appellant asserts that he was unlawfully charged duplicative costs of court in trial court cause number F17-76222-X. In his sixth issue, appellant challenges the trial court's imposition of a time-payment fee as untimely.

In a single cross-issue, the State argues that the jury fee and specialty court fee imposed in trial court cause number F17-76221-X should be struck and the courthouse security fee and consolidated state fees should be reduced to adhere to the statutory provisions applicable at the time the offenses were committed.

We overrule appellant's first four issues, sustain his fifth and sixth issues, and sustain the State's cross-issue. We affirm the trial court's judgments as modified. Because the dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Between 2009 and 2012, complainants J.C. and M.C. lived with appellant and his wife. Their mother was a single parent living in Wisconsin. She initially sent the two children to live with her mother, the children's maternal grandmother, in Texas, but she was unable to take both children. Arrangements were made for a cousin to care for them until further arrangements were made for the children to live with appellant and his wife. In 2012, the children returned to Wisconsin to live with their

mother.  In March 2017, M.C. made an outcry of past abuse by appellant to a school counselor.  During the subsequent investigation, J.C. made a similar outcry.

On October 30, 2017, appellant was charged by two separate indictments with continuous sexual abuse of a child.  In the indictment in trial court cause number F17-76221-X, the State alleged that, on or about March 1, 2010, during a period that was 30 or more days in duration, appellant committed two or more acts of sexual abuse against M.C., a child younger than 14 years of age.  In the indictment in trial court cause number F17-76222-X, the State alleged that, on or about March 1, 2010, during a period that was 30 or more days in duration, appellant committed two or more acts of sexual abuse against J.C., a child younger than 14 years of age. Appellant pleaded "not guilty" to both charges, and the cases proceeded to trial before a jury.  On June 9, 2022, in each case, the jury convicted appellant of the lesser-included offense of aggravated sexual of a child.  The trial judge sentenced him to 15 years' imprisonment in each case, to be served concurrently.  This appeal followed.

## DISCUSSION

## I.    Trial Judge's Comments during Jury Selection

In his first issue, appellant argues the trial court violated his right to due process by incorrectly defining the reasonable-doubt standard during jury selection and simultaneously commenting on the weight of the evidence.  The complained-of

comments took place when the trial judge addressed the venire panel at the beginning of jury selection:

> I don't have a definition for beyond a reasonable doubt, but I submit to you that once you hear all the evidence if there's no other logical conclusion, other than the Defendant is the person that committed the crime[,] then I think reasonable doubt has probably been met.

Appellant acknowledges that he did not object to the remarks in the trial court and that, in order to present a complaint on appeal, the record must show that a complaint was made to the trial court by timely request, objection, or motion stating the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1); *see Pitts v. State*, No. 05-14-01375-CR, 2016 WL 1270311, at \*5 (Tex. App.—Dallas Mar. 31, 2016, no pet.) (mem. op., not designated for publication) (citing *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (concluding defendant waived complaint about trial court's explanation of reasonable doubt standard during jury selection by failing to renew objection when trial court repeated explanation); *Marshall v. State*, 312 S.W.3d 741, 743 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (concluding one must object to trial court's voir dire comments to preserve error)).

Appellant argues on appeal that the court's remarks constituted fundamental constitutional error and that he can raise the issue for the first time on appeal, citing our recent decision in *Tuazon v. State*, in which we held that the defendant in that case had a waivable-only, *Marin*-category-two due process right not to have the trial court define reasonable doubt in a manner that shifted the State's burden of proof.

*See Tuazon v. State*, 661 S.W.3d 178, 192 (Tex. App.—Dallas 2023, no pet.) (citing *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). Appellant urges that the trial court's erroneous definition of beyond a reasonable doubt violated his constitutional due process and statutory rights to a fair trial, to be presumed innocent, and to be proved guilty beyond a reasonable doubt. Appellant contends that the trial court's remarks "authorized a finding of guilt on an inference—not on a requirement of proof beyond a reasonable doubt."

The State argues that appellant did not preserve error and that the court's remarks did not constitute fundamental error because they "do not rise to the same level of 'constitutional magnitude' found in *Tuazon*." The State further argues that even if the issue were preserved, the remarks did not constitute a comment on the weight of the evidence because the comments were not "reasonably calculated to benefit the State or prejudice the defendant's rights." We agree with the State that, even if the issue were preserved for our review, the remarks, while perhaps ill-advised, were not error.

As we noted in *Tuazon*, "[t]he better practice would have been to give no definition of reasonable doubt to the jury at all." *See Tuazon*, 661 S.W.3d at 193–94 (commenting that while the "better practice" was "said . . . in the context of a jury charge, in our view trial courts should consider a similar approach during any explanatory statements to the venire") (citing *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000)). We further held that in reviewing a trial court's comments

–5–

during voir dire, we examine whether the comments "'were reasonably calculated to benefit the State or prejudice the defendant's rights,' and thus constitute reversible error." *See id.* at 194 (quoting *Gardner v. State*, 733 S.W.2d 195, 210 (Tex. Crim. App. 1987)).

In *Tuazon*, the trial judge used a football field analogy to tell the venire the State would meet its burden at a specific point: where "just the nose of [the football]" was "over the 50-yard line" by "just that little, tiny bit."[1] *See Tuazon*, 661 S.W.3d at 189. We held such comments conflated the reasonable-doubt standard with the civil standard of preponderance of the evidence in violation of appellant's right to due process. *See id.* at 194. We cannot conclude that the complained-of definition of reasonable doubt here similarly lessened the State's burden of proof.

---

[1] The quoted comments from the trial court in *Tuazon* included the following:

> At the end of all of this, I will be giving the jury the law and the elements of the cases and we will ask you to apply those facts to the law and see if the State met its burden of proof. If they prove all of the elements, then the verdict is guilty. If they don't, the verdict is not guilty.
>
> . . . .
>
> The burden of proof is beyond a reasonable doubt. That is the State's burden. It never shifts to the Defense . . . . The burden always stays with the State to prove their case. And so it's going to be up to you-all to determine reasonable doubt.
>
> There are – there's not really a good definition of reasonable doubt, so the attorneys are going to talk to you about that. They'll tell you it's more than this, it's less than that. It's different for every single juror to determine if they've met that burden, so there is not a very specific thing that we can look for and say, if you check these boxes, that's reasonable doubt. That's going to be each of you to determine what that is for you.
>
> What – one easy way to look at it is if you think about a football field, if they can get that football, just the nose of it, over the 50-yard line then they've met their burden. Okay? They're not expected to have to take it all the way down to the endzone, spike the football, and convince everybody beyond any shadow of a doubt, no possibility, right? It's just that little, tiny bit over the 50-yard line. So that's kind of what we're looking for.

*Tuazon v. State*, 661 S.W.3d 178, 186 (Tex. App.—Dallas 2023, no pet.).

Although appellant asserts that the complained-of definition of reasonable doubt impermissibly "authorized a finding of guilt on an inference" and that it was analogous with the definition we found erroneous in *Tuazon*, we conclude the definition here is more similar to that in another unpublished memorandum opinion from this Court: *Pitts v. State*, No. 05-14-01375-CR, 2016 WL 1270311, at *5–6 (Tex. App.—Dallas Mar. 31, 2016, no pet.) (mem. op., not designated for publication). In that case, the trial judge made the following comment to the jury during voir dire: "The State's not required to prove guilt beyond all possible doubt. It's only required that the State prove to exclude all reasonable doubt concerning the Defendant's guilt." *See id.* We noted that these comments were similar to comments in several other cases, which did not constitute fundamental error. *See id.* (citing *Haro v. State*, 371 S.W.3d 262, 264–66 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (concluding trial court's comments, including comments that reasonable doubt is "what the individual jurors believe[ ] it to be" and "[i]t's not beyond all possible doubt, and the Charge will tell you that, it's beyond a reasonable doubt[,]" did not constitute fundamental error); *Wilkerson v. State*, 347 S.W.3d 720, 726 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (concluding trial court's comments, including "reasonable doubt is what's in your mind to be reasonable doubt" and "is the same kind of doubt in making any kind of decision in our lives," did not "bear on the presumption of innocence or vitiate the impartiality of the jury"); *Muhammed v. State*, 331 S.W.3d 187, 194–95 (Tex. App.–Houston [14th Dist.] 2011, pet.

ref'd) (trial court's comments concerning reasonable doubt, including that "[i]t's not 100 percent" and "the law does not require that you be convinced 100 percent[,]" did not constitute fundamental error); *Marshall v. State*, 312 S.W.3d 741, 742– 45 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (concluding trial court's comments concerning reasonable doubt, including that "*the Legislature figures everybody is reasonable and they would know a reasonable doubt when they see it*[,]" were not fundamental error) (emphasis in original)).

Appellant also argues that the trial judge's complained-of definition of the standard of proof was also an improper comment on the weight of the evidence, and thus a violation of his right to due process and structural error. Appellant urges the trial court "left the jury panel with a firm impression that the court had already found a crime had in fact been committed, and the only question to be answered was with regard to identity of the perpetrator." However, we cannot agree with appellant's interpretation of the trial judge's statements. Prior to the complained-of definition, the trial judge stated the following:

> The presumption of innocence will apply throughout the trial. The burden of proof is on the State. **By that I mean the State brought the charges and the State must prove the charges** and they must prove to you the guilt of the Defendant beyond a reasonable doubt.

(emphasis added). Viewed in light of the context of the definition, we do not agree that the trial judge left the jury with the impression that they had only to answer the identity of the perpetrator. Instead, the judge said, "the State must prove the charges." Therefore, the jury would have heard that the State had to prove the

charges and the identity of the perpetrator. Accordingly, we cannot conclude the comments were "reasonably calculated to benefit the State or prejudice the defendant's rights." *See Tuazon*, 661 S.W.3d at 194; *see also Gardner*, 733 S.W.2d at 210 (reviewing appellant's challenge of trial court's examination of a prospective juror for reversible error).

Because we conclude the complained-of statements were not error, we overrule appellant's first issue.

## II. Extraneous Offense

In his third issue, appellant urges the trial court abused its discretion by allowing extraneous-offense evidence to be heard by the jury.

During the defense's case in chief, defense counsel questioned appellant's wife Emilia Anguiano as follows:

Q. . . . . you understand why we're here today; do you understand?

A. Yes.

Q Okay. And you understand what Hector is being charged with?

A Yes.

Q Okay. In the time that you've known [appellant] have you ever known him to do anything like that?

A No.

. . . .

Q. What was your reaction when you heard what the charges were against [appellant]?

A. I was shocked because he wouldn't do a thing like that.

When defense counsel passed the questioning of the witness to the State, the prosecutor requested and was granted a bench conference outside the presence of the jury. At that conference, the prosecutor stated that the above exchange "open[ed] the door to the Defendant's criminal history" and asked to be able to question appellant's wife about a previous charge against appellant of injury to a child in a case that was dismissed. The trial judge granted the request so far as to permit the prosecutor to "ask if she is aware of that charge and incident." Defense counsel objected to that questioning as prejudicial against appellant, noting that, as the prosecutor conceded, it was unknown why the case was dismissed, and the case could have been dismissed due to lack of probable cause. The trial court overruled the objection.

The jury was brought back into the courtroom, and the State proceeded with cross-examination of appellant's wife:

> Q. Before we start talking about [J.C.] and [M.C.] there was some testimony you gave on direct examination in regards to your husband. And specifically you said that in the time you've known him he's never done anything like this; is that correct?
>
> A. Right.
>
> Q. Okay. Are you aware of the fact that in 1991 he was arrested for injury to a child?
>
> A. Yes.
>
> Q. Okay. Are you aware of who the complainant was in that case?
>
> A. Who was the complainant?
>
> Q. Who the alleged victim in the case is?

–10–

A. She was my niece.

Q. Okay. So when you testified earlier that wasn't a hundred percent accurate, was it?

A. Well, it's been a long time so I mean I didn't know.

Q. It was during your marriage though, correct?

A. Yes.

Appellant raises several complaints regarding the trial court's decision to admit the foregoing testimony, including relevancy and prejudicial effect of the evidence, including its tendency to confuse the issues[2] and mislead the jury, arguing the trial court's ruling violated rules 401, 403, 404, and 405 of the rules of evidence,

---

[2] Appellant cites the following exchange to complain that the State used that testimony to "leave a false impression with the jury and to openly make [appellant's wife] out to be a liar."

Q. Now, of course, you love your husband, correct?
A. Correct.
Q. Have been together for how many years?
A. Forty-three years.
Q. Forty-three years. You would never want anything bad to happen to him, correct?
A. Well, no.
Q. Certainly would do anything to help him if he was ever in trouble; is that right?
A. In what way?
Q. In any way?
A. Well, yeah. I mean, I would help him.

Appellant further complains "the State continued to hammer at [appellant's wife's] credibility in closing arguments."
And when his wife got up there and testified and she forgot about a monumental kind of — I'm married to him for forty-three years but in 1991 I completely forgot that there was that injury to a child allegation, right. We'll smooth right over that. People are going to get up here and they're going to say some things that aren't true. And I think the people that got up here and said some things that aren't true are his wife and his daughter and I completely understand that. I'm not mad at them. It's human nature. The question is not do you believe them. The question is why would you.

as well as article 38.37 of the code of criminal procedure. *See* TEX. R. EVID. 401, 403, 404, 405; TEX. CODE CRIM. PROC. art. 38.37. Appellant argues, among other things, that the trial court erred in admitting the evidence of extraneous misconduct because there was insufficient evidence in the record so that "a rational jury could find beyond all reasonable doubt that Appellant committed that dismissed offense." The State urges that of those bases, defense counsel's trial objection only preserved objections to relevancy under rule 401 and whether the evidence was more prejudicial than probative under rule 403.

We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *See Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See id.* We may not substitute our own decision for that of the trial court. *See id.*

Relevant evidence is generally admissible; irrelevant evidence is not. *See Gonzalez*, 544 S.W.3d at 370 (citing TEX. R. EVID. 402). Relevant evidence is evidence which has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. *See id.* (citing TEX. R. EVID. 401). Evidence does not need to prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving

–12–

or disproving a fact of consequence. *See id.* Evidence of an extraneous offense may be irrelevant if the State does not prove that the appellant committed the offense. *Fish v. State*, 609 S.W.3d 170, 181 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994)). For such evidence to be admissible, the trial court must make an initial determination under Rule 104(b) that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *See id.* at 160–61 (citing TEX. R. EVID. 104(b)).

As discussed above, the prosecutor conceded when requesting to question appellant's wife about the 1991 case that the case was dismissed and there was no known reason for the dismissal. The trial court then permitted the attorneys to question appellant's wife on voir dire outside the presence of the jury where she similarly testified that she was aware her husband was arrested, incarcerated, and charged with injury to a child sometime between 1990 and 1991, but that she did not remember whether he went to trial or pleaded guilty in that case. After that voir dire, the trial court ruled that the State was permitted to "ask if she is aware of an allegation, if she is aware that there was an arrest and that's as far as you can go." The trial court also permitted the defense counsel to "ask if she's aware of the disposition of that case." When questioned about the 1991 case, appellant's wife only testified that appellant had been arrested that year for injury to a child and that

–13–

the alleged victim was her niece. No other details of the case or underlying misconduct were discussed or otherwise established by any evidence.

The State urges, "Appellant's prior injury to a child charge while the witness was married to Appellant was relevant since it was inconsistent with the witness's testimony that Appellant would never and had never abused a child." The State further argues that evidence of other crimes, wrongs, or acts may be admitted to rebut a defensive theory, such as here, where appellant's defensive theory was that the complainants fabricated their allegations against appellant. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (noting rebuttal of defensive theory is one of permissible purposes for which evidence may be admitted under Rule 404(b)). However, extraneous-misconduct evidence must be proven beyond a reasonable doubt and by competent evidence. *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022) (citing *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008)). The State does not cite, and our review of the record does not yield, any evidence to support a finding that appellant committed the extraneous offense of injury to a child beyond a reasonable doubt.

Accordingly, we conclude that even assuming the evidence was admitted to rebut appellant's defensive theory, the trial court erred in admitting evidence of extraneous misconduct without competent evidence to prove appellant's commission of same beyond a reasonable doubt.

The erroneous admission of evidence is non-constitutional error. *See Gonzalez v. State*, 544 S.W.3d at 373. Non-constitutional errors are harmful, and thus require reversal, only if they affect an appellant's substantial rights. *See id.* (citing TEX. R. APP. P. 44.2(b)). The court of criminal appeals has construed this to mean that an error is reversible only when it has a substantial and injurious effect or influence in determine the jury's verdict. *See id.* If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction. *See id.* In making this determination, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained-of error. *See id.* Additionally, since the extraneous-misconduct evidence was admitted over objection made outside the jury's presence, we review for any harm from its admission without reference to whether any other similar evidence was admitted without objection. *See Valadez*, 663 S.W.3d at 148 (citing *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005)) (noting that subsequent objections to admission of evidence are not required when trial court entertains objections and rules outside jury's presence or when counsel gets a running objection)).

Reviewing the record, we note that the complained-of evidence represents a small portion of testimony of argument in a two-day trial with several witnesses'

–15–

testimony and several exhibits. The testimonial evidence of the underlying conduct, includes lengthy and detailed testimonies from the complainants. M.C. testified, first identifying appellant in court, and then describing the sexual and physical abuse appellant committed against him and J.C. while they lived with appellant and appellant's wife. J.C. also identified appellant in court and testified regarding the sexual and physical abuse appellant committed against him and M.C. while they lived with appellant and appellant's wife. The mother of J.C. and M.C. testified that M.C. began "acting out" after he returned from approximately four years of living with appellant and his wife. The police detective who investigated the complaints of J.C. and M.C. regarding appellant testified that he observed the forensic interviews of the complainants where both made outcries of abuse against appellant, observed the two complainants separately identify appellant from photographs, and reviewed the reports from medical exams of the complainants. The forensic interviewer who interviewed J.C. and M.C. at a child advocacy center testified regarding the sexual and physical abuse M.C. told her that appellant perpetrated against him while M.C. lived with him from the ages of approximately five to nine years old, which was consistent with the complainants' testimony. She also testified regarding the sexual and physical abuse J.C. told her that appellant perpetrated against him while J.C. lived with him from the ages of approximately eight to eleven years old, which was consistent with the complainants' testimony.

Although appellant complains the State heavily emphasized the complained-of error, we disagree. The State's cross-examination of appellant's wife implied that she would lie on behalf of her husband, and the prosecutor later referenced her testimony about the 1991 arrest to encourage the jury to question her credibility about whether appellant would commit the underlying offenses. However, in over fifteen pages of closing arguments, the State mentioned the complained-of error only once for less than a page of the record, and then it was to focus on whether appellant's wife was credible in saying she had never known appellant to do anything like the allegations in this case. We conclude this factor does not weigh heavily in favor of a finding of harm.

Based on our review of the record and the four factors discussed above, we have a fair assurance that the admission of the complained-of evidence had but a slight effect on the jury's verdict. *See Gonzalez*, 544 S.W.3d at 375.

We overrule appellant's third issue.

## III. Effective Assistance of Counsel

In his second and fourth issues, appellant contends his trial counsel was ineffective in failing to object or properly preserve his first and third issues.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Johnson v. State*, 624 S.W.3d 579, 585 (Tex. Crim. App. 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or

omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *See id.* (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). The defendant must overcome "the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and that the conduct constituted sound trial strategy. *See id.* at 586 (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). For an appellant to defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *See id.* (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

In our resolution of appellant's first issue above, we concluded, even if the complaint were preserved, the trial court did not err. Accordingly, appellant has not satisfied the first *Strickland* prong. *See Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) ("Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error.") (citing *Strickland*, 466 U.S. at 687). Because we resolve this issue on the deficiency prong, we do not address the second prejudice prong. *See id.* We overrule his second issue.

In our resolution of appellant's third issue above, we concluded the trial court erred by admitting the complained-of evidence in violation of rule 401 but that such

error did not result in reversible non-constitutional harm. The other bases for objection appellant argues his trial counsel should have preserved in his fourth issue are similarly analyzed for non-constitutional harm. *See Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (holding erroneous admission of evidence non-constitutional harm). Accordingly, appellant cannot satisfy the second *Strickland* prong, that he suffered prejudice as a result of counsel's error. *See Hart*, 667 S.W.3d at 781. We overrule his fourth issue.

### MODIFICATION OF THE JUDGMENTS AND BILLS OF COSTS

In his fifth and sixth issues, appellant urges that the judgments in both cases should be modified to correct errors in the bills of costs and the judgments. In a single cross-issue, the State similarly requests additional modifications to the bill of costs in trial court cause number F17-76221-X.

We may modify a trial court's written judgment if the necessary information to do so is contained in the record. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Additionally, we are authorized on direct appeal to order a modification of a bill of costs independent of finding an error in the trial court's judgment. *See Contreras v. State*, No. 05-20-00185-CR, 2021 WL 6071640, at *9 n.7 (Tex. App.—Dallas Dec. 23, 2021, no pet.) (mem. op. on reh'g, not designated for publication) (citing *Bryant v. State*, No. 10-18-00352-CR, 2021 WL 3191937, at *2 (Tex. App.—Waco July 28, 2021, no pet.); *Dority v. State*, No.

–19–

11-19-00236-CR, 2021 WL 3087479, at \*11 (Tex. App.—Eastland July 22, 2021, no pet.)).

In his fifth issue, appellant asserts that he was unlawfully charged duplicative costs of court in trial court cause number F17-76222-X. The State agrees.

"In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant." TEX. CODE CRIM. PROC. ANN. art. 102.073(a). For purposes of this rule, a person convicted of two or more offenses in the same trial or plea proceeding is convicted of those offenses in a "single criminal action." *See Garcia v. State*, No. 05-21-01134-CR, 2022 WL 5113172, at \*1 (Tex. App.—Dallas Oct. 5, 2022, no pet.) (mem. op., not designated for publication) (quoting *Hurlburt v. State*, 506 S.W.3d 199, 201–04 (Tex. App.—Waco 2016, no pet.)). If the convictions are for the same category of offense and the costs are the same, the costs should be assessed in the case with the lowest trial court cause number. *See Thomas v. State*, No. 05-20-00114-CR, 2021 WL 2948550, at \*2 (Tex. App.—Dallas June 30, 2021, pet. ref'd) (mem. op., not designated for publication) (citing CRIM. PROC. art. 102.073(b); *Johnson v. State*, No. 05-19-00641-CR, 2020 WL 4745552, at \*5 (Tex. App.—Dallas Aug. 17, 2020, no pet.) (mem. op., not designated for publication)).

Here, appellant was convicted of two first degree felony offenses in a single trial. *See* TEX. PEN. CODE ANN. § 22.021(a)(2)(B) (aggravated sexual assault of a

child).  Court costs, therefore, should have been assessed only once in the case with the lowest trial court cause number, F17-76221-X.  The record shows that appellant was assessed court costs in the amount of $386 in trial court cause number F17-76221-X and $386 in trial court cause number F17-76222-X even though the cases were tried together.  Because all of the fees charged in trial court cause number F17-76222-X were already assessed in trial court cause number F17-76221-X, those fees are duplicative.  We sustain appellant's fifth issue and modify the judgment and the bill of costs in trial court cause number F17-76222-X to delete the $386 in duplicative costs.

In his sixth issue, appellant challenges the trial court's imposition of a time-payment fee as untimely.  The State agrees.

The record in each of the cases contains, in addition to a bill of costs, a document titled "Criminal Court Fee Docket."  These fee dockets include the $386 costs listed in the judgments, plus an additional $15 labeled as "IP PLN."  Thus, the docket in each case states that the "Amount Assessed" against appellant is $401.  According to the legend of abbreviations provided with the fee docket, "IP PLN" stands for "Installment Plan."  This appears to be the time payment fee that is taxed against criminal defendants who fail to timely pay any portion of the costs included in the bill of costs.  *See* CRIM. PROC. art. 102.030(a) (authorizing trial courts to assess a $15 fee if the defendant fails to pay "any part of a fine, court costs, or restitution, or another reimbursement fee" by the 31st day after the judgment is signed); *see also*

–21–

*Jakubiec v. State*, No. 05-22-00031-CR, 2023 WL 3836430, at \*3 n.6 (Tex. App.—Dallas June 6, 2023, no pet.) (mem. op., not designated for publication) (citing *Shuler v. State*, 650 S.W.3d 683, 689 (Tex. App.—Dallas 2022, no pet.)). An appeal "stops the clock and suspends a defendant's obligation to pay court costs." *Jakubiec*, 2023 WL 3836430, at \*3 n.6 (quoting *Dulin v. State*, 620 S.W.3d 129, 132–33 (Tex. Crim. App. 2021)) (citing *Shuler*, 650 S.W.3d at 689–90). Thus it is premature to tax the time payment fee against appellant during the pendency of his appeal. *See id.*

The time payment fee assessed against appellant in trial court cause number F17-76221-X was premature. In that case, Appellant filed his notice of appeal on July 5, 2022, and the $15 time payment fee was not assessed until July 10, 2022. Therefore, the time payment fee in trial court cause number F17-76221-X should be struck in its entirety. *See Shuler*, 650 S.W.3d at 690. In addition to concluding that the costs assessed in trial court cause number F17-76222-X were duplicative and should be struck, we further conclude the time payment fee should be struck as inapplicable. *See* CRIM. PROC. art. 102.030(a) (authorizing trial courts to assess a $15 fee if the defendant fails to pay "any part of a fine, court costs, or restitution, or another reimbursement fee" by the 31st day after the judgment is signed).

Accordingly, we sustain appellant's sixth issue and modify the bills of costs in both trial court cause numbers to strike the $15 time payment fee.

In a single cross-issue, the State argues that the jury fee and specialty court fee imposed in trial court cause number F17-76221-X should be struck and the courthouse security fee and consolidated state fees should be reduced to adhere to the statutory provisions applicable at the time of the offenses were committed.

The Texas Code of Criminal Procedure requires that a judgment order a defendant to pay court costs. *See Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014) (citing CRIM. PROC. arts. 42.15 (applicable when the punishment is only a fine), and 42.16 (applicable when the punishment is something other than a fine)). Only statutorily authorized court costs may be assessed against a criminal defendant. *See id.* (citing CRIM. PROC. art. 103.002 ("An officer may not impose a cost for a service not performed or for a service for which a cost is not expressly provided by law.")). The bill of costs reflects the trial court assessed a $1 jury fee and $25 specialty court fee. The State argues that appellant should not have been assessed those fees because section 134.101(b) of the Texas Local Government Code, the statute authorizing the fees, did not become effective until January 1, 2020, and applies only to offenses committed on or after that date, and the underlying offenses here were alleged to have occurred on or about March 1, 2010. *See* TEX. LOC. GOV'T CODE § 134.101(b) (local consolidated fee on conviction of felony, providing for assessment of $1 jury fee and $25 specialty court fee).

We agree with the State that section 134.101 does not apply and that the jury and specialty court fees should be deleted from the costs assessed against appellant.

–23–

*See Shuler*, 650 S.W.3d at 687 (holding section 134.101 applies only to offenses committed on or after January 1, 2010); *see also Contreras v. State*, No. 05-20-00185-CR, 2021 WL 6071640, at *8 (Tex. App.—Dallas Dec. 23, 2021, no pet.) (mem. op. on reh'g, not designated for publication) (noting the jury and specialty court fees were newly added costs as of the "Cost Act," Act of May 23, 2019, 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982).

The State similarly argues that the courthouse security fee of $10 and the consolidated state fees of $185 assessed against appellant should be reduced because they were assessed in accordance with statutes applicable to offenses committed on or after January 1, 2020.  *See* LOC. GOV'T §§ 133.102(a)(1) (providing for assessment of $185 consolidated fee on conviction of felony); 134.101(b) (providing for assessment of $10 courthouse security fee).  We agree.

The Cost Act overhauled the statutory cost scheme in criminal cases.  *See Contreras*, 2021 WL 6071640, at *9 (citing Act of May 23, 2019, 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982).  Relevant here, the Cost Act increased the state consolidated fee from $133.00 to $185.00.  *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, 2019 Tex. Gen. Laws 3982, § 1.03 (amending LOC. GOV'T § 133.102(a)).[3]  The Cost Act also created a new "Local Consolidated Fee," which combined previously authorized costs, plus two new costs, into one section of the

---

[3] We note that although section 133.102(a) was revised more than once before the Cost Act, the version applicable to offenses committed on or about March 1, 2020, the amount of state consolidated fee of $133 remained the same until the Cost Act increased the amount to $185.

Local Government Code.  *See id.* § 1.05 (enacting LOC. GOV'T § 134.101).  One of those previously authorized costs was the courthouse security fee, which was increased from $5 to $10.  *See* LOC. GOV'T § 102.017.[4]  Accordingly, we agree that the consolidated state fees amount should be reduced to $133 and the courthouse security fee reduced to $5.

We sustain the State's cross issue.

### CONCLUSION

We modify the bill of costs and judgment in trial court cause number F17-76222-X to delete the $386 in duplicative costs and to strike the time payment fee.

We modify the bill of costs in trial court cause number F17-76221-X to strike the time payment fee, the jury fee, and the specialty court fee and further modify the bill of costs to reduce the consolidated state fees to $133 and courthouse security fee to $5.  We modify the judgment in trial court cause number F17-76221-X to reduce the court costs to $303.

We affirm the trial court's judgments as modified.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47
220680F.U05

---

[4] Similarly as in note 4 *supra*, we note that although section 102.107 was revised more than once before the Cost Act, the version applicable to offenses committed on or about March 1, 2020, the amount of courthouse security fee of $5 remained the same until the Cost Act increased the amount to $10.



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

HECTOR ANGUIANO, Appellant

No. 05-22-00680-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas Trial Court Cause No. F17-76221-X. Opinion delivered by Justice Kennedy. Justices Nowell and Miskel participating.

On the Court's own motion, we **WITHDRAW** the opinion and **VACATE** the judgment of January 23, 2024. This is now the judgment of the Court.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> We modify the bill of costs in trial court cause number F17-76221-X to strike the time payment fee, the jury fee, and the specialty court fee and further modify the bill of costs to reduce the consolidated state fee to $133 and courthouse security fee to $5. We modify the judgment in trial court cause number F17-76221-X to reduce the court costs to $303.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 1st day of March, 2024.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HECTOR ANGUIANO, Appellant

No. 05-22-00686-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas Trial Court Cause No. F17-76222-X. Opinion delivered by Justice Kennedy. Justices Nowell and Miskel participating.

On the Court's own motion, we **WITHDRAW** the opinion and **VACATE** the judgment of January 23, 2024. This is now the judgment of the Court.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We modify the bill of costs and judgment in trial court cause number F17-76222-X to delete the $386 in duplicative costs and to strike the time payment fee.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 1st day of March, 2024.